COMMONWEALTH *vs.* TIMOTHY DYKENS.

Essex. January 10, 2003. - March 14, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Jury and Jurors. Practice, Criminal,* Jury and jurors, Instructions to jury, Assistance of counsel, Duplicative charges, Capital case. *Constitutional Law,* Public trial, Assistance of counsel. *Intoxication. Homicide. Kidnapping.*

At a criminal trial, the judge did not abuse his discretion by permitting notetaking by the jurors only during the second portion of his jury instructions (which explained the elements of the offenses involved and principal-joint venture liability) and not during the first part of the charge (which described rules of law such as the presumption of innocence and proof beyond a reasonable doubt), where the judge instructed the jury not to consider any instruction more or less important than another or to give special attention to any instruction, but to consider the charge as a whole; further, the judge did not err in his instructions to the jury regarding notetaking, or in failing to give prior notice regarding the notetaking. [830-835]

At a criminal trial, the judge did not err in not allowing anyone to enter or leave the court room during his final instructions to the jury. [835-836]

At a trial on indictments for murder, kidnapping, and attempted aggravated rape in which the defendant's counsel was faced with overwhelming evidence of his client's guilt in an atrocious crime, counsel did not provide ineffective assistance in failing to object to proper notetaking by the jury and the proper instructions given on the subject by the judge or to seek the retention of the juror's notes; in conceding the defendant's guilt as to two indictments in his closing as part of his trial strategy; in failing to object to the judge's proper instruction concerning principal liability; in failing to investigate and present an intoxication defense, where the defendant had not provided any evidence that would have formed a basis for concluding that something helpful to his defense would have been discovered; in failing to object to an allegedly duplicative indictment, where there was no harm to the defendant; and in failing to object to part of the instruction on kidnapping that was proper. [836-841]

INDICTMENTS found and returned in the Superior Court Department on June 12, 1996.

The cases were tried before *Joseph A. Grasso, Jr.,* J., and a motion for a new trial, filed on March 1, 1999, was heard by him.

*Bernard Grossberg (Matthew Price* with him) for the defendant.

*Gregory I. Massing,* Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant was convicted by a jury of murder in the first degree on the theories of deliberate premeditation and extreme atrocity or cruelty.[1] He was also convicted of kidnapping and attempted aggravated rape (aggravated by kidnapping, serious bodily injury, and joint venture). On appeal, he claims that the trial judge erred by permitting the jurors to take notes during only a portion of the jury charge, by failing to give the jury proper cautionary instructions as to the use of the notes, and by closing the court room during the charge to the jury. The defendant also claims that his trial counsel provided constitutionally ineffective assistance of counsel. We have reviewed the entire record pursuant to our duty under G. L. c. 278, § 33E. We reject all claims of error and also discern no basis to grant relief under G. L. c. 278, § 33E. Accordingly, we affirm the defendant's convictions.[2]

1. *Facts.* Based on the evidence presented at trial, the jury could have found the following facts.

On the evening of June 1, 1996, while the defendant and his friend, John Keegan, were at the Golden Banana, a Peabody nightclub, they repeatedly asked a dancer to leave with them. She declined. At about midnight, the defendant (wearing a white shirt) and Keegan (wearing a dark shirt and dark shorts) pulled into the Stadium Mobil Mart, a twenty-four hour gasoline station and convenience store off Route 1 in Peabody. There they noticed the victim was purchasing groceries. Keegan pointed her out to the defendant, saying, "She looks like the girl that we just left from the Banana." The defendant replied, repeating, "You know what we got to do." The victim bought cigarettes, a can of Beefaroni, a bottle of Mountain Dew, and a bottle of

---

[1]Although the Commonwealth proceeded against him on the theory of felony-murder as well, he was not convicted on that basis. See *infra.*

[2]The defendant filed a motion for a new trial that was denied. Although he has appealed from its denial, he has not argued any issues therein. Pursuant to our obligation under G. L. c. 278, § 33E, we have considered these claims and they provide no basis for granting relief.

water and left. The defendant and Keegan followed her to her home in the Ledgewood Condominiums in Peabody.

According to various witnesses at the condominium, some time after midnight, a woman and a man were struggling in the parking lot. The woman sounded in distress. One of the two was wearing something white. They fell, and another individual (wearing a dark top and dark shorts) approached and delivered four or five violent kicks, then walked away. All three disappeared when a car drove by. The driver of that car heard cracking in the woods and saw a man in a white shirt lying atop another person there. He also saw a bottle of Mountain Dew, a can of spaghetti, a pair of black, high-heeled shoes, and keys scattered about the walkway leading to the building. The driver went to his third-floor apartment. From there, he saw a person later identified as Keegan emerge from the woods. Then he saw another individual in the woods dragging someone by the arms through the trees toward railroad tracks; Keegan followed. Finally, a third witness, after speaking briefly with Keegan and noticing the items scattered about, telephoned the police.

Sergeant Edward Bettencourt of the Peabody police department responded and found the victim's body in the wooded area near the condominiums. Her clothing had been torn and pulled back, fully exposing her breasts and genital area. Extreme damage, which need not be recounted here, had been inflicted on the victim. A forty-seven pound boulder lay forty inches from the victim's head, and a two-pound rock was near her knee. Both were covered entirely with blood. Adhering to the boulder was blonde hair (the victim had blonde hair) with flesh attached at the roots. Surrounding trees and bushes were spattered with blood. The cause of death was later determined to be blunt trauma to the head and neck, resulting in multiple skull, facial, and jaw fractures and destruction of the brain. The victim's right hand revealed injuries suggestive of defensive wounds. Abrasions and scrapes to her body indicated that she had been dragged along the ground. Her genital area showed no sign of trauma, and no semen was present.

The defendant and Keegan were apprehended shortly after the victim's body was found. The defendant, with a cut lip and scrapes and scratches on his body, was found at a public

telephone. His clothing (including a white shirt) was soaking wet, and the defendant responded to police inquiry about his wet clothing by stating that he had been thrown into a puddle in a nearby empty lot; police investigation revealed that the lot was completely dry. (Other evidence suggested that the defendant's clothing was wet from walking in marshy water along railroad tracks.) Deoxyribonucleic acid (DNA) testing of a bloodstain on the front of the defendant's underwear indicated that "the person who contributed the most DNA to that stain" had a DNA type that "matche[d]" that of the victim. Blood type analysis of a bloodstain on the fly area of the defendant's pants revealed that both he and Keegan were excluded as its source, but that the victim could not be excluded. (Evidence indicated that passing through a wet, marshy area could adversely affect the results of both the DNA and the blood type analyses.) The defendant's belt and belt buckle had a blood spatter in a direction that could have been made only if the belt had been unbuckled. Police were unable to lift fingerprints from the bloody rocks.

The defendant was charged with murder in the first degree, attempted aggravated rape, and kidnapping. At trial, the Commonwealth proceeded on all three theories of murder in the first degree: deliberate premeditation, extreme atrocity or cruelty (with the defendant as a principal only as to those two theories), and felony-murder (with the defendant as either a principal or a joint venturer with Keegan). His defense was that Keegan was the principal actor in committing the crimes and that the defendant was too intoxicated either to have been the principal actor or to have had the capacity to share the intent to commit the crimes so as to be adjudged a joint venturer.

2. *Notetaking by jurors.* The defendant claims that the judge "committed constitutional error" and abused his discretion by permitting notetaking by the jurors only during the second portion of his jury instructions (which explained the elements of the offenses involved and principal-joint venture liability) and not during the first part of the charge (which described rules of law such as the presumption of innocence and proof beyond a reasonable doubt), thereby suggesting to the jurors that the elements were more important than the "fundamental principles of

law favorable to the defendant." The defendant further contends that the judge did not provide the jurors with appropriate cautionary instructions regarding the taking and use of such notes. As there was no objection concerning notetaking or the instructions thereon, we review these claims to determine whether there was error and, if so, whether the error created a substantial likelihood of a miscarriage of justice. *Commonwealth v. Cortez*, 438 Mass. 123, 128 (2002).

The judge did not allow the jurors to take notes during the evidence or the closing arguments. Before he charged the jury, the judge explained that the charge consisted of two parts: (1) "matters of general applicability which apply to most, if not all, criminal cases" and (2) "the substantive law of the indictments which have been tried." For the first part, he told the jurors that they would be "relying entirely on [their] memory." For the second part, he said that he would distribute notebooks and that the jurors could take notes. He instructed:

> "Because the law is not always easily explained, not just to jurors, but also to attorneys and judges, I am going to allow you to use these notebooks when and as you believe it would be helpful in making a notation reflecting what the status of the law is.

> "You will not need to take down everything or even close to everything that I say, at that point in time.

> "Also, you will not have a written transcript of these instructions with you, when you are in the jury room. So, use these notebooks in the manner you consider helpful. But, above all, listen carefully to all of my instructions, both the part where you will not have the ability to take notes, and the part where you will have the ability to take notes.

> "Don't be concerned with writing down what I say so much as in listening to what I tell you about the law."

The judge proceeded to give the standard instructions: on the role of the trial judge, the jury's responsibilities, including that they must accept the law as he states it, direct and circumstantial evidence, consciousness of guilt, assessment of witness cred-

ibility, the presumption of innocence, and the burden of proof. He also gave a humane practice instruction. After a short "stretch break," notebooks were passed to the jurors, and the judge instructed:

> "[Y]ou may, if you wish, make notes of the substantive law of the particular indictments. And again I tell you, when I am instructing you on the substantive law, the important thing is to listen attentively to what I am saying. You do not need to take down all or even a major portion of what I'm saying. But, to the extent that you wish to do so, you may make a note or two to assist you."

Juror notetaking has long been approved in this Commonwealth, see H.B. Zobel, The Boston Massacre 271 (1970); 3 Legal Papers of John Adams 25 n.89 (L. Wroth & H. Zobel eds. 1965); *Commonwealth* v. *Wilborne*, 382 Mass. 241, 253 (1981); *Commonwealth* v. *Tucker*, 189 Mass. 457, 497 (1905), and in other jurisdictions, see *Commonwealth* v. *St. Germain*, 381 Mass. 256, 267-268 (1980); Annot., Taking and Use of Trial Notes by Jury, 36 A.L.R. 5th 255 (1996 & Supp. 2002). Rule 8A of the Rules of the Superior Court (2001), adopted in 1978, provides guidelines:

> "In any case where the court, in its discretion, permits jurors to make written notes concerning testimony and other evidence, the trial judge shall precede the announcement of permission to take notes with appropriate guidelines. Upon the recording of the verdict or verdicts, the notes of the jurors shall be destroyed by direction of the trial judge. Jurors may also be granted permission by the trial judge to make notes during summation by counsel and during the judge's instructions to the jury on the laws."

We have approved notetaking. See *Commonwealth* v. *DiBenedetto*, 427 Mass. 414, 422 (1998); *Commonwealth* v. *St. Germain, supra* at 265-270.

Notetaking is discretionary with the judge. We have never required either that judges permit notetaking during any particular portion of a trial or that the "appropriate guidelines"

be given in a specific form. We perceive no abuse of discretion in permitting the jury to take notes during only that portion of the charge concerning the elements of the crimes. The judge may well have believed that concepts such as proof beyond a reasonable doubt, presumption of innocence, and inferences (all included in the first portion of his charge) are better understood exclusively by listening than by listening accompanied by notetaking. By contrast, the listing of the elements of the crime and of joint venture liability lends itself to notetaking: the specific points the Commonwealth must prove can be written as the judge enumerates them; as they are repeated (as is the practice and as was done in this case), the juror can add any elements that were missed or make refinements to the original notation. Where, as here, a defendant is tried on three theories of murder in the first degree and two other complicated felonies, and principal and joint venture liability is involved, it is particularly difficult for a juror to retain in memory all the specific elements at issue.

Contrary to the defendant's claim, the judge took pains to assure that no part of his charge was emphasized at the expense of another. The jurors were instructed not to consider any instruction more or less important than another or to give special attention to any instruction; rather, the jury were to consider the charge as a whole. He admonished: "[A]bove all, listen carefully to all of my instructions, both the part where you will not have the ability to take notes, and the part where you will have the ability to take notes . . . . All of these instructions apply to the case." The problem of potential overemphasis may be avoided by cautioning the jury to "consider the whole charge in reaching their verdict." *Commonwealth* v. *Baseler*, 419 Mass. 500, 505 (1995). The judge's instructions here assured that the jury would do so.[3]

Although the defense contends that the judge's reference to the second portion of his instructions as the "substantive law"

---

[3]The defendant's contention (made in a postargument letter) that our requirement in *Commonwealth* v. *Baseler*, 419 Mass. 500, 505-506 (1995), that a tape recording of instructions sent to the jury must be of the entire charge is inapplicable here. An incomplete tape recording of a judge's instructions creates different circumstances.

could have served to deemphasize the earlier instructions on presumption of innocence and proof beyond a reasonable doubt, these latter principles were emphasized throughout the trial. During jury selection, the judge defined these rules of law (as well as the fact that the defendant need not present any evidence) as "fundamental constitutional principles." His description of the presumption of innocence and the burden of proof was preceded by a statement that these two principles of law "form the cornerstone of every criminal trial." During his preliminary instructions to the jurors, the judge instructed that the jurors were to draw no inference of guilt from the indictments and that the defendant was presumed to be innocent and had to be found not guilty unless the Commonwealth proved beyond a reasonable doubt that he had committed the offenses with which he is charged.

Although the defendant is correct that the judge defined proof beyond a reasonable doubt in the earlier portion of his jury instructions, the judge did not omit that concept from the latter portion. During the second part of the charge (that in which notetaking was permitted), he mentioned (approximately seventy times) the requirement that the Commonwealth prove all the elements beyond a reasonable doubt. Indeed, nearly every time the judge listed the elements of a crime he specifically included the requirement that the Commonwealth prove those elements beyond a reasonable doubt.[4]

The defendant also contends that the judge did not adequately instruct the jurors regarding notetaking. Many of the instructions usually given regarding notetaking were inapplicable here because notes were not permitted during the presentation of evidence. The judge did instruct that the jurors' notes should not be copious. He also warned against using notes as authority to persuade other jurors by stating that all the jurors were to "have equal voices and should deliberate equally and collectively." There was no error.

---

[4]The older New York cases cited by the defendant to support his argument that the cautionary instructions here were insufficient express a dated philosophy inimical to notetaking that we and most other jurisdictions, now including New York, have rejected. See *Commonwealth* v. *DiBenedetto*, 427 Mass. 414, 422 (1998); *Commonwealth* v. *St. Germain*, 381 Mass. 256, 265-270 (1980). See also *People* v. *Hues*, 92 N.Y.2d 413, 417 (1998).

Finally, the defendant claims that the judge's lack of notice regarding the notetaking denied counsel opportunity to argue against it. Although it is preferable to provide counsel notice of such a procedure, such notice is not required and the lack of notice does not constitute error.

3. *Closing of court room.* The defendant contends that the judge erred by "implementing a surprise, arbitrary and unique courtroom closure procedure during jury instructions without making specific findings as to the need for closing the courtroom," and that the defendant was "singled out for courtroom closure when every other trial judge in this Commonwealth does not close their respective courtrooms during final jury instructions." He claims that this procedure violated his right to a public trial under the Sixth Amendment to the United States Constitution. The defendant makes this contention while conceding at oral argument that it is the common practice in the Commonwealth to close a court room during jury instructions. See *Commonwealth* v. *Patry*, 48 Mass. App. Ct. 470, 476 n.5 (2000) ("it is customary in the trial court for judges to order that no person may enter or leave the courtroom while the judge is instructing the jury").

The jury instruction phase of a trial is difficult and complex. The jurors are instructed in unfamiliar language about complicated and longstanding concepts. To close the court room in order to avoid distractions to the jurors is a practice suitable to the solemnity and importance of the charge. See *id.* ("The reason for the order is to allow the jury to be instructed without being distracted by the comings and goings of the audience"). See also *People* v. *Colon*, 71 N.Y.2d 410, 417-418, cert. denied, 487 U.S. 1239 (1988) ("The charge to the jury is a solemn and comparatively complex phase of the trial requiring precision and concentration on the part of both the jury and the Trial Judge. . . . [T]he flow of traffic [may be controlled] during a unique portion of the trial where the jurors must absorb and master the applicable legal principles and the Trial Judge is singly devoted to assuring comprehension of these principles"). In fact, the judge did more than we have required by addressing the public shortly before his charge and informing them that no one would be allowed to enter or leave the court room during

his final instructions and then providing a ten-minute recess. There was no "closure" of the court room. The public had a reasonable opportunity to attend the charge. It is not unreasonable, and certainly not unconstitutional, to require that one who wishes to hear jury instructions hear them in their entirety and not interrupt the judge's charge by entering or leaving in the midst of it. Most jurisdictions that have considered the issue recently have arrived at a similar conclusion.[5] See, e.g., *Herring* v. *Meachum*, 11 F.3d 374, 379-380 (2d Cir. 1993), cert. denied, 511 U.S. 1059 (1994); *Davidson* v. *State*, 591 So. 2d 901, 902-903 (Ala. Crim. App. 1991); *State* v. *Herring*, 210 Conn. 78, 98-100, cert. denied, 492 U.S. 912 (1989); *Commonwealth* v. *Hartman*, 536 Pa. 211, 218 (1994). See also *People* v. *Woodward*, 4 Cal. 4th 376, 379 (1992), cert. denied, 507 U.S. 1053 (1993) (posting signs and locking doors during prosecutor's closing argument not closure).

4. *Ineffective assistance of counsel.* The defendant maintains that several errors by trial counsel denied him effective assistance, in violation of his rights under art. 12 of the Massachusetts Declaration of Rights and the Sixth and Fourteenth Amendments to the United States Constitution. He claims that his trial counsel was ineffective for failing to (1) object to the notetaking and the instructions given on the subject or to seek the retention of the jurors's notes; (2) fully investigate an intoxication defense; (3) present the testimony of the defendant; (4) address two indictments in his closing, but rather conceding the defendant's guilt as to them; (5) object to a prejudicial instruction concerning principal liability; (6) object to an allegedly duplicative indictment; and (7) object to part of the instruction on kidnapping. In a capital case, when the defendant claims ineffective assistance of counsel, we determine "whether there was an error in the course of the trial (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion." *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). Our review is

---

[5]Because there was no "closure" of the proceedings, the judge was not required to make findings, articulate reasons, or narrowly tailor his order. See *Press-Enter. Co.* v. *Superior Court*, 478 U.S. 1, 13-14 (1986); *Waller* v. *Georgia*, 467 U.S. 39, 48 (1984).

under G. L. c. 278, § 33E, which provides a standard of review more favorable than the constitutional standard of review. See *id.* Here, trial counsel was faced with overwhelming evidence of his client's guilt in an atrocious crime. The "basic trouble from the defense standpoint was weaknesses in the facts rather than any inadequacy of counsel." *Commonwealth* v. *Burke,* 414 Mass. 252, 264 (1993), quoting *Commonwealth* v. *Mercado,* 383 Mass. 520, 528 (1981).

The defendant claims that his trial counsel was ineffective for failing to object to the notetaking and failing to request appropriate instructions. As there was no error, there can be no ineffective assistance of trial counsel. *Commonwealth* v. *Thompson,* 431 Mass. 108, 120, cert. denied, 531 U.S. 864 (2000). The defendant also maintains that trial counsel was ineffective for failing to request inspection or preservation of the jurors' notes. The second sentence of rule 8A mandates destruction of jurors' notes on "the recording of the verdict." "To review a juror's notes would violate the sanctity of the deliberative process [and] the parties have 'no more right to examine these writings than [they] do to interrogate the jurors about their verdict. The notations are personal to the jurors and will not be laid open for inspection and debate.' " *Sligar* v. *Bartlett,* 916 P.2d 1383, 1387 (Okla. 1996), quoting *State* v. *Williams,* 80 Ohio App. 3d 648, 654 (1992).

The defendant asserts that his counsel conceded his liability as a joint venturer to kidnapping and attempted aggravated rape by arguing in his closing:

> "The evidence shows you that Mr. Keegan was the murderer of [the victim]. The evidence, I cannot stand before you and tell you that [the defendant] is blameless. Clearly, he is not. But, he is not, to the degree that Mr. Keegan is, responsible for this death of [the victim]."

The quoted statement was preceded by a review of the evidence supporting the defendant's contention that he was drunk. Counsel then argued, in effect, that Keegan was the principal and that the defendant was too intoxicated to have been the principal or to have shared the intent necessary to participate as a joint venturer. Given the evidence in the case, this argument

and the concession that the defendant was not "blameless" was about as much as counsel could reasonably do. Counsel's argument was based on the evidence the defendant had elicited from Commonwealth witnesses and had presented in his own case. It was also consistent with the judge's clear instructions repeated both in the kidnapping and attempted aggravated rape portions of the instructions that to prove the defendant guilty as a joint venturer, the jurors had to find that he shared the intent of the principal to commit the crime and that he was, "by agreement, willing and available to help the principal carry out the crime." Further, the judge repeatedly instructed that the defendant's intoxication could be considered on the questions of his ability to share the required intent and of his being, by agreement, willing and able to carry out the crime, if necessary. Indeed, in regard to the kidnapping charge, the jury were informed twice within a single page of the instructions that they could consider evidence of the defendant's intoxication on his ability to share the intent required. Once again, the defendant was doomed by the evidence against him. We do not deem counsel's strategy impermissible simply because it was not successful. See *Commonwealth* v. *LeBlanc*, 364 Mass. 1, 13 (1973).

The defendant's next argument is that it was ineffective assistance for his trial counsel to fail to object to a portion of the judge's instruction regarding principal liability. The allegedly improper statement is the italicized sentence in the following instruction given just before the description of the elements of murder and at the outset of the judge's lengthy explanation of principal and joint venture liability:

> "To begin with, an individual cannot be both a principal and a joint venturer at the same time, in the commission of the exact same crime in the exact same way. There can be more than a single principal in the commission of a particular crime, however. When an individual, such as [the defendant], is alleged to be a principal, the Commonwealth alleges that he, himself, performed the essential elements of the particular crime. *Whether someone else may have been a principal is irrelevant to this trial*" (emphasis supplied).

The Commonwealth proceeded against the defendant only as a

principal on the theories of deliberate premeditation and extreme atrocity or cruelty, and the judge so informed the jury.[6]

The challenged sentence appears only once in the charge and, in context, is accurate; thus, there was no basis for objection. The judge correctly instructed on principal liability. He also stated correctly that there could be more than one principal, but that it made no difference if there was another principal. The only question is whether this defendant acted as a principal either alone or with another principal. Contrary to the defendant's assertion, this could not eviscerate his defense to the murder charge. His defense was that he was too intoxicated to act as a principal. Defense counsel presented evidence of the defendant's intoxication and then argued in closing that Keegan, not the defendant, was the principal, and, in effect, that the defendant was too inebriated to have formed the intent necessary to kill. He essentially argued that the Commonwealth had not proved its case, and that, while the defendant was not an innocent, he did not commit the crime as a principal. The argument dovetailed with the instructions, and, given the facts of the case, was not an unreasonable strategic choice. Because there was no error, there can be no ineffective assistance of counsel. *Commonwealth* v. *Thompson*, 431 Mass. 108, 120, cert. denied, 531 U.S. 864 (2000).[7]

The defendant maintains that his trial counsel failed to present a full intoxication defense. Specifically, he claims that trial counsel failed to (a) seek admission of a statement by the defendant that was contained in a police report that he and Keegan had "split 4-5 pitchers of beer"; (b) investigate employees and patrons of the Golden Banana to locate evidence regarding his consumption of alcohol; (c) present expert testimony on the subject; and (d) advise the defendant to testify. The defendant's statement in the police report was inadmissible hearsay, *Commonwealth* v. *McLaughlin*, 433 Mass. 558, 564-567 (2001), and the Commonwealth did not "open the door" to it by inquiring

---

[6]The Commonwealth proceeded against the defendant as both a principal and a joint venturer on the felony-murder theory. However, as the jury did not base their verdict on this theory, we do not address the relation between it and the instruction on principal liability.

[7]The judge instructed several times that there could be two principals to a crime.

of the officer about the defendant's demeanor, without eliciting or referring to the content of the statement. See *Commonwealth v. Nurse*, 50 Mass. App. Ct. 36, 40 (2000).

The defendant claims that investigation by counsel would have revealed individuals at the Golden Banana who recalled how much he drank that night, but does not indicate what facts might have been disclosed by such investigation. "Speculation that such facts existed is not enough to support this claim." *Commonwealth v. Bertrand*, 385 Mass. 356, 366 (1982), quoting *Commonwealth v. Bolduc*, 375 Mass. 530, 540 (1978). The defendant has not provided any evidence that would form a basis for concluding that something helpful to his defense would have been discovered. The appropriate means for making this argument is by a motion for a new trial that provides the judge the opportunity to make findings regarding what evidence might have been obtained and its potential effect at trial. See *Commonwealth v. Waite*, 422 Mass. 792, 807 (1996).

The contentions regarding the presentation of expert testimony and advising the defendant to testify also require factfinding and consideration by the trial judge, who is "better equipped to conduct . . . evidentiary hearings." *Id.*[8] These claims thus are not properly before us, and we do not consider whether they have any merit. See *Commonwealth v. Burgess*, 434 Mass. 307, 317-318 (2001).

The defendant faults trial counsel for permitting the kidnapping charge to go to the jury without objection when kidnapping was a lesser included offense subsumed within the charge of attempted aggravated rape. Apparently, the defendant's argument is that, because kidnapping was one of the factors the jury could consider that would render the rape an aggravated one, the separate offense of kidnapping was duplicative and should not have gone to the jury. Even if this were so, which we do not decide, there was no harm to the defendant. The jury indicated on the verdict slip that they found the defendant guilty of attempted aggravated rape based on the aggravating factors of kidnapping, joint venture, and serious bodily injury. Only one of these factors need be found for a rape to be deemed

---

[8]None of these claims was raised in the defendant's motion for a new trial. See note 2, *supra*; *Commonwealth v. Randolph*, *ante* 290, 293 (2002).

aggravated. Since the jury found the other two factors to exist as well, the convictions were not duplicative.[9],[10] Cf. *Commonwealth* v. *Brum, ante* 103, 104 & n.1 (2002) (defendant's conviction of armed robbery not duplicative of his conviction of felony-murder [with armed robbery as predicate felony] as he was also convicted on theories of deliberate premeditation and extreme atrocity or cruelty); *Commonwealth* v. *Rivera*, 397 Mass. 244, 252 & n.5 (1986).

The defendant maintains that the judge erred in instructing regarding kidnapping that "[a]ny restraint of a person's liberty is a confinement or an imprisonment."[11] This, however, has been the law in this Commonwealth for over one century. "Every such restraint of the liberty of a person, if not justified by law, is in the eye of the law a false imprisonment . . . punishable by statute . . . Gen. Sts. c. 160, § 30." *Commonwealth* v. *Nickerson*, 5 Allen 518, 525-526 (1863) (discussing precursor to our present kidnapping statute). In sum, as to all the claims of ineffective assistance of counsel: "If there was a weakness in the defense, it was not for want of accomplished lawyering, but for want of any promising defense." *Commonwealth* v. *Vao Sok*, 435 Mass. 743, 758 (2002).

*5. Relief pursuant to G. L. c. 278, § 33E.* We have considered the entire record pursuant to our obligation under G. L. c. 278, § 33E. There is no reason to exercise our authority to reduce the jury's verdict on the murder charge or to order a new trial.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*

---

[9]The jury also were instructed that they had to unanimous as to the aggravating element or elements.

[10]For purposes of felony-murder, the judge instructed the jury that they could consider only two theories of aggravation: kidnapping or joint venture (or both).

[11]Although the defendant does not so state explicitly, we infer that his argument is that counsel was ineffective for failing to object.