## Commonwealth *vs*. Curtis Wilcox.

No. 07-P-738.

Suffolk. April 18, 2008. - August 12, 2008.

Present: Perretta, Mills, & Rubin, JJ.

*Kidnapping. Rape. Practice, Criminal,* Duplicative charges, Presumptions and burden of proof, Conduct of prosecutor, Assistance of counsel. *Evidence,* Spontaneous utterance.

At the trial of indictments charging the defendant with, inter alia, kidnapping and aggravated rape based on his forcing the victim at knifepoint into an alley where he raped and stabbed her, the judge properly ruled that the kidnapping charge was not duplicative of the aggravated rape charge, given that two of the three bases of predicate aggravation were unrelated to kidnapping; that each of the crimes at issue required an element that the other did not; and that, even assuming the applicability of the "single act" standard of determining whether criminal charges are duplicative, the act of forcing the victim into the alley, though admittedly brief, was nonetheless sufficient to support the defendant's separate kidnapping conviction. [347-350]

At the trial of indictments charging kidnapping and aggravated rape, the prosecutor did not shift the burden of proof to the defendant by asking a witness — a police detective — whether the defendant admitted his culpability in a conversation between the two, nor did the testimony elicited (regarding the witness's conversation with the defendant, in which the defendant voluntarily engaged after a proper waiver of his Miranda rights) implicate the defendant's right to remain silent without an adverse inference. [350-351]

The judge at the trial of indictments charging kidnapping and aggravated rape did not abuse his discretion in admitting in evidence, under the excited utterance exception to the hearsay rule, testimony by an emergency room doctor concerning the victim's statement identifying her attacker. [351]

Although the performance of defense counsel at a criminal trial fell measurably below that expected of an ordinarily fallible lawyer when he inadvertently asked the defendant on direct examination if he had previously been convicted of attempted rape (instead of attempt to commit a crime), the defendant was not deprived of an otherwise available, substantial ground of defense, where the evidence pointing to the defendant's guilt was overwhelming, and where the error was mitigated by the judge's multiple cautions to the jury. [351-353]

Indictments found and returned in the Superior Court Department on February 9, 2004.

The cases were tried before *Margot Botsford*, J.

*Edward B. Fogarty* for the defendant.

*Paul B. Linn*, Assistant District Attorney, for the Commonwealth.

MILLS, J. A jury found the defendant guilty of aggravated rape, G. L. c. 265, § 22(*a*); kidnapping, G. L. c. 265, § 26; and aggravated assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(*c*).[1] On appeal, he claims that (1) the charge of kidnapping merged with the other charges and cannot be treated as a separate offense; (2) the prosecutor erroneously shifted the burden of proof to the defendant; (3) a statement by the victim was improperly admitted as an excited utterance; and (4) defense counsel was ineffective in his examination of the defendant on direct examination.

We summarize only those facts that are relevant to the issues raised on appeal as the jury might have found them.

On May 7, 2003, shortly after midnight, the victim was forced at knifepoint into an alley where she was stabbed four times while being raped by the defendant, whom she knew by the nickname "Black."[2] The victim and the defendant were not close friends, but knew each other through mutual acquaintances. Just prior to the attack, they had a brief conversation while meeting on the street. The victim expressed her happiness at seeing the defendant and asked where he had been since she had not seen him in a while. He told her that he had just gotten out of jail and she offered to give him some money, which he declined. The victim wrote her boyfriend's address and the telephone number on a slip of paper for the defendant, in case he needed anything in the future, and walked away.

Moments later, the victim felt an object pressed into her back

---

[1] He was sentenced to concurrent terms of from thirteen to fifteen years for the aggravated rape and assault convictions, and of from twenty-five years to twenty-five years and one day for the kidnapping conviction, to be served concurrently.

[2] According to a police detective's testimony, the defendant told the detective that he is known as "Black," and that he has the word "Black" tattooed on one arm, and the word "Curtis" on his other arm. His friends testified that the defendant is known as "Black."

and heard the defendant shout or say, " 'go, go, go' as he pushed her what appears to have been a very short distance — a matter of some steps — into an alley that led from the street they were on to a parallel street."[3] He ordered her to pull her pants down, then raped her, while stabbing her four times with a jagged-edged knife. The victim was able to see the defendant's face at some point during the attack and repeated his nickname, "Black." The defendant told the victim to "shut up." The victim testified that each time she said his name, he stabbed her again. The defendant then left the victim, who was bleeding profusely, and ran down the alley toward his home, which was close to the site of the attack. The victim, rapidly losing blood, ran into the street yelling for help, but none was forthcoming. When she remembered that she knew someone who lived nearby, she went there and banged on the door until the resident emerged and called 911.

The paramedics were called and arrived at 12:53 A.M. The victim at that time was soaked in blood and had full neck veins, which indicated that her injuries were interfering with blood flow. She was also in shock. She was treated at the scene and then transported to a hospital. An emergency room doctor asked the victim who had stabbed her, and she replied, "Black." A police officer who arrived at the hospital at around the same time asked the same question, to which the victim again replied, "Black." She was treated for stab wounds to her left shoulder, hip, and flank, and the center of her torso. She lost between one and one-half and two liters of blood, some of which had to be drained from her chest cavity. The victim was hospitalized for seven days and evidence was taken on the second day by a sexual assault nurse examiner.

In conversations with a detective prior to the trial, the defendant initially denied having had sex with anyone on May 6, 2003, or of ever having had sex with any woman in her forties.[4] However, at trial, deoxyribonucleic acid (DNA) evidence was

[3]This description of the defendant's action and the victim's forced movement appears in the judge's thoughtful memorandum in which she addressed the issue whether the kidnapping conviction should be dismissed, or a separate sentence imposed.

[4]The defendant was twenty-three at the time of the assault.

introduced linking the defendant to the victim.[5] The defendant testified that he did have sex with the victim on May 6, 2003, but much earlier in the day, at approximately 6:00 P.M. He stated that the sex was consensual, in exchange for drugs, and that after having sex with the victim, he gave her a rock of "crack" cocaine.[6] He stated that he did walk home from a friend's house between midnight and 1:00 A.M, but that he did not walk down the alley where the attack occurred, and he denied having raped or stabbed the victim.

*Discussion.* 1. *Kidnapping and aggravated rape as separate offenses.* The defendant claims that the forced movement of the victim at knifepoint into an alley, and her subsequent confinement there while being raped and stabbed, did not constitute a "seizure, detention or movement that is separate and apart from the underlying . . . rape" and, therefore, does not support a separate kidnapping conviction.

We disagree. The judge, while acknowledging that the kidnapping was close "both in terms of time and space" to the rape, properly ruled that the kidnapping was not duplicative of the aggravated rape charge in the circumstances of this case. First, this is not a case in which kidnapping was necessarily a lesser included offense of aggravated rape because the kidnapping was the only aggravating factor alleged. Contrast *Commonwealth* v. *Petrillo*, 50 Mass. App. Ct. 104, 111 (2000), cert. denied, 532 U.S. 1030 (2001). On the contrary, the jury here were presented with three separate aggravating factors — serious bodily injury, armed assault and battery, and kidnapping — and found all three to be proved beyond a reasonable doubt. In other words, two of the three bases of predicate aggravation were unrelated to kidnapping. See *Commonwealth* v. *Dykens*, 438 Mass. 827, 840-841 (2003) (aggravated rape and kidnapping convictions were not duplicative where jury convicted defendant of aggravated rape based on two other aggravating factors in addition to kidnapping).

Second, the offenses of kidnapping and aggravated rape are

---

[5]Vaginal swabs taken at the hospital were tested, and the DNA of sperm found in the victim matched the defendant's DNA.

[6]A blood test conducted the night of the attack revealed no alcohol or drugs in the victim's system.

not duplicative under the elements-based test of *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). Pursuant to this test, "[a]s long as each offense includes an element that the other does not, 'neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not [duplicative].' " *Commonwealth* v. *Jones*, 441 Mass. 73, 75 (2004), quoting from *Commonwealth* v. *Valliere*, 437 Mass. 366, 371 (2002). Kidnapping, as charged in this case, is defined by statute as follows:

> "Whoever, without lawful authority, forcibly or secretly confines another person within this commonwealth against [her] will . . . shall be punished . . . ."

G. L. c. 265, § 26, as amended, St. 1998, c. 180, § 63. Aggravated rape is defined by statute as follows:

> "Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against [her] will, or compels such person to submit by threat of bodily injury and if either such sexual intercourse or unnatural sexual intercourse results in or is committed with acts resulting in serious bodily injury, or is committed by a joint enterprise, or is committed during the commission or attempted commission of an offense defined in [G. L. c. 265, § 26] . . . shall be punished . . . ."

G. L. c. 265, § 22(*a*), as appearing in St. 1980, c. 459, § 6. Each of these crimes requires an element that the other does not: kidnapping, unlike aggravated rape, requires confinement, and aggravated rape, unlike kidnapping, requires sexual intercourse. Thus, the two charges are not duplicative under the *Morey* test.

Notwithstanding, the defendant claims that the two charges are nonetheless duplicative in the circumstances of this case under the "single act" test set out in *Commonwealth* v. *Jones*, 382 Mass. 387, 394 (1981), and cited in *Commonwealth* v. *Rivera*, 397 Mass. 244, 252-253 (1986). For two reasons, however, this claim cannot succeed. First, the Legislature is authorized to establish separate penalties for offenses that might otherwise be duplicative. See *Commonwealth* v. *Alvarez*, 413 Mass. 224, 232

(1992). As the trial judge recognized, the Legislature has done just that regarding the offenses of kidnapping and aggravated rape. The third paragraph of G. L. c. 265, § 26, which was added to the statute in 1998, imposes a mandatory sentence of at least twenty-five years in prison for anyone who commits the offense of kidnapping and also sexually assaults his victim. The statute goes on to specify that, "[f]or the purposes of this paragraph, 'sexual assault' shall mean the commission of any act set forth in [G. L. c. 265,] section[] . . . twenty-two . . . ." As the judge noted, this provision was designed to require any person, who both kidnaps and rapes his victim, to serve the mandatory twenty-five year sentence, regardless whether the two crimes are based on the same conduct:

> "[T]he 'aggravated' portion of the general kidnapping statute at issue here, G. L. c. 265, § 26, third paragraph, specifically provides for a mandatory minimum sentence when acts of kidnapping and rape are combined — as well as when acts of kidnapping and causing serious bodily injury while armed with a dangerous weapon are combined. This legislative juxtaposition appears to support the view that the kidnapping and rape convictions should be considered separately and should not be merged, at least where, as here, the jury found bases for the aggravated rape conviction that were independent of the kidnapping conviction."

Thus, the defendant's claim must fail.

Furthermore, even assuming for the sake of argument that the "single act" standard is applicable, the kidnapping and aggravated rape charges in this case were not based on a single act. "Although the restraint that is an integral part of rape . . . may be one with the rape . . . itself, [the Supreme Judicial Court has been] unwilling to adopt a rule that requires the treatment of confinement or asportation used as a means to facilitate the commission of [a crime] as merged in the substantive crime." *Commonwealth* v. *Rivera*, 397 Mass. at 254 (defendant kidnapped victim by dragging her to secluded yard to rape her). See *Commonwealth* v. *Harvey*, 397 Mass. 803, 810-811 (1986) (defendant kidnapped victim by pulling him into woods prior to murder); *Commonwealth* v. *Garafolo*, 23 Mass. App. Ct. 905,

908 (1986) (defendant kidnapped victim by driving him around for over twenty minutes before robbing him); *Commonwealth* v. *Brown*, 66 Mass. App. Ct. 237, 241-243 (2006) (defendant kidnapped victim by poking her with stick and threatening to kill her between two rapes).

The law of this Commonwealth for over one century instructs that "any restraint of a person's liberty is a confinement or an imprisonment." *Commonwealth* v. *Dykens*, 438 Mass. at 841. See *Commonwealth* v. *Nickerson*, 5 Allen 518, 525-526 (1863). The judge was correct in concluding that the act of forcing the victim into the alley, though admittedly brief, was nonetheless sufficient to support the defendant's separate kidnapping conviction.

2. *Shifting the burden of proof.* The defendant's second contention is that a question asked by the prosecutor to a Commonwealth witness improperly shifted the burden of proof to the defendant.[7]

The problem with the defendant's argument is that the prosecutor did not ask the detective whether the defendant denied (or failed to deny) committing the crimes, thereby potentially raising an inference of guilt. Contrast *Commonwealth* v. *Cobb*, 374 Mass. 514, 520 (1978) (jury were permitted, even encouraged, to consider defendant's failure to deny guilt or answer police questions); *Commonwealth* v. *Robles*, 423 Mass. 62, 71 (1996) (defendant's denial of guilt and false statements to police merited jury charge on consciousness of guilt). Rather, the prosecutor asked whether the defendant *admitted* to the crime, to which the detective answered in the negative. It is difficult, therefore, to imagine how testimony that the defendant did *not* admit guilt could be prejudicial to him.

Nor is the defendant's right to remain silent without an adverse

---

[7]The prosecutor, on direct examination of the witness, a police detective, elicited testimony pertaining to a conversation between the detective and the defendant in which the defendant told the detective his version of events on the night of the crime. The question at issue here was asked on redirect, after the detective offered testimony on cross-examination pertaining to the conversation. The prosecutor asked, "Detective, other than the defendant saying he didn't have sex with anyone that night, did he say — did he ever say — did you ever have written in your report anywhere that he said he did it?" The detective replied, "No, Ma'am."

inference being drawn from such silence implicated here, as the defendant claims. It is undisputed that the defendant properly waived his Miranda rights before voluntarily speaking with the detective, and the defendant testified at his own trial. There was no silence from which to draw an inference. Contrast *Commonwealth* v. *Young*, 399 Mass. 527, 530-532 (1987) (prosecutor's closing argument improperly urged jurors to draw adverse inferences from defendant's silence at trial); *Commonwealth* v. *Collett*, 17 Mass. App. Ct. 913, 913 (1983) (witness's testimony that defendant did not respond to witness's statement that "[t]hat kind of force could not have created the injuries [the victim] had" was not invitation for jury to draw impermissible inference of guilt from defendant's silence).

3. *Admissibility of an excited utterance.* The defendant claims that testimony by an emergency room doctor who treated the victim was improperly admitted as an excited utterance because the victim's statement identifying her attacker was made approximately one hour after the assault. However, our courts have not set a definite and fixed time limit on the excited utterance exception to the hearsay rule, but instead have held that a victim need only be still sufficiently agitated or "under the influence of the exciting event" at the time the statement was made. *Commonwealth* v. *King*, 436 Mass. 252, 254 (2002). See *Commonwealth* v. *Grant*, 418 Mass. 76, 81 (1994); *Commonwealth* v. *Marshall*, 434 Mass. 358, 363-364 (2001); *Commonwealth* v. *Ivy*, 55 Mass. App. Ct. 851, 854 (2002). A judge is given broad discretion to determine whether the circumstances of a particular statement warrant an excited utterance exception. See *Commonwealth* v. *King*, *supra* at 255. Here, it is apparent that the judge did not abuse that discretion.

4. *Ineffective assistance of counsel.* Finally, the defendant claims that his counsel was ineffective because (1) he inadvertently asked the defendant if he had previously been convicted of attempted rape (instead of attempt to commit a crime); and (2) he did not object to evidence of the defendant's recent incarceration. The second basis is without merit because it is apparent on the record that the decision to offer evidence of the defendant's recent incarceration was made by the defendant, likely *against* the advice of counsel.

However, the inadvertent question asked by the defendant's counsel on direct examination of the defendant warrants careful attention. The exchange was as follows:

Q.: "At some point your grandmother passed away; do you know when that was?"

A.: "November 2002, I think it was."

Q.: "Were you home when she passed away?"

A.: "No."

Q.: "Where were you?"

A.: "I was incarcerated."

Q.: "All right. And . . . were you previously convicted of two counts of larceny from a person?"

A.: "Yes."

Q.: "Convicted and sentenced?"

A.: "Yes."

Q.: "And were you also convicted of two counts of attempted rape — excuse me — attempted to commit a crime?"

A.: "Yes."

Q.: "And were you sentenced on those?"

A.: "Yes."

We employ the familiar *Saferian* test for evaluating the defendant's claim. *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Given the circumstances, we agree that the lawyer's performance fell measurably below that which is expected of an ordinary fallible lawyer. However, we conclude that the defendant was not deprived of an otherwise available, substantial ground of defense. The evidence pointing to the defendant's guilt was overwhelming, and the error was mitigated by the

judge's multiple cautions to the jury during the defendant's direct examination.[8],[9]

The judgments are affirmed.

*So ordered.*

---

[8]For example, during the direct examination of the defendant, the judge told the jury: "I am going to interrupt you for two things; number one, just remind again, that the evidence concerning [the defendant's] being in jail is not admissible on any issue related to whether or not he committed the offenses from — for which he is on trial for today. As I mentioned before, that evidence is admissible only on the issue of context, timing, setting, and that's the only reason you may consider it. I also want to tell you that [the defendant] testified to certain convictions that he described in the past, evidence concerning those convictions. Again, it's not admissible as substantive evidence on the issue of whether or not [the defendant] is guilty of the crimes for which he stands trial here today. You may consider that evidence solely on the issue of [the defendant's] credibility as a witness here at trial. That's the only purpose for which the evidence concerning prior convictions may be used. It's on the issue of credibility at this trial, nothing else."

[9]The defendant questioned the appropriate standard for our review. An ineffective assistance of counsel claim is reviewed under the familiar *Saferian* standard. Nevertheless, we note that, even applying the more lenient prejudicial error standard, we can say "with fair assurance . . . that the judgment was not substantially swayed by the error." *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 n.7 (1999), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).