The defendant, Raymond R. Jefferson, appeals from his convictions in the Boston Municipal Court of, among other crimes, assault and battery by means of a dangerous weapon, to wit: a flashlight, in violation of G. L. c. 265, § 15A. The defendant maintains five arguments on appeal. First, the defendant argues that the evidence was insufficient to sustain the verdict of assault and battery by means of a dangerous weapon because "there was no showing that the alleged weapon, a flashlight, was used in a manner capable of producing serious bodily injury." Second, the defendant argues that the introduction of testimony from the victim's coworker, the first responding police officer, an emergency medical technician (EMT), and the investigating officer regarding the details of the assault were errors that created a substantial risk of a miscarriage of justice because such testimony was first complaint testimony and did not meet the first complaint requirements. Third, the defendant argues that the judge erred in allowing the victim's rebuttal testimony in evidence as prior consistent statements. Fourth, the defendant argues that the introduction of his prior bad act, i.e., his suspension from work, was not relevant and was unfairly prejudicial. Finally, the defendant claims that he received ineffective assistance of counsel. We affirm.
Background. We summarize the facts as the jury could have found them, in the light most favorable to the Commonwealth, reserving some facts for later discussion. Commonwealth v. Sanna, 424 Mass. 92, 93 (1997). On September 12, 2015, the defendant went to pick up his paycheck at Domino's Pizza (store). While inside the store, the defendant and the victim interacted with one another. The defendant and the victim "side hug[ged]" and the defendant tried to "press up against" the victim. The victim pushed the defendant away, telling him to "[b]ack up." The defendant thereafter grabbed another employee's flashlight from a nearby table. The victim tried to "go around [the defendant]" in order to "move towards the back" of the store when the defendant "jammed the flashlight" in her "frontal area," her "vagina." The victim testified that the defendant then "moved up closer to [her]," "went around behind [her] and whispered in [her] ear, 'I don't work here anymore. I can do whatever the fuck I want.' " The defendant then "jammed his finger behind [her,] ... cupp[ing her] behind ... [while the defendant's] middle finger went up [her] butt." Darius Cardoso, the victim's coworker who was present at the time of the incident, testified that he saw the defendant "move closer to [the victim]" so that the defendant was "around -- a little bit below [the victim's] waist." Cardoso then saw the defendant "hit [the victim] with the flashlight below [the victim's] waist." Cardoso also testified that the defendant either "touch[ed]," "hit," or "tapped" the victim with the flashlight.
Discussion. 1. Sufficiency of the evidence. We review the record and determine "whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient ... to permit the jury to infer the existence of the essential elements of the crime charged." Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), quoting from Commonwealth v. Sandler, 368 Mass. 729, 740 (1975). "The evidence may be primarily or entirely circumstantial, provided that, when viewed in the light most favorable to the Commonwealth, it 'and the inferences permitted to be drawn therefrom [are] of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.' " Commonwealth v. Jansen, 459 Mass. 21, 27 (2011), quoting from Latimore, supra at 677. An inference "need only be reasonable and possible and need not be necessary or inescapable." Commonwealth v. Casale, 381 Mass. 167, 173 (1980).
A conviction of violating G. L. c. 265, § 15A, requires the Commonwealth to have proved beyond a reasonable doubt that the defendant committed an intentional, unjustified, and unexcused touching of the victim by means of a dangerous weapon. "Courts have classified dangerous weapons into two categories: those dangerous per se and those dangerous as used." Commonwealth v. Appleby, 380 Mass. 296, 303 (1980), citing Commonwealth v. Farrell, 322 Mass. 606, 615 (1948). "Weapons which are not dangerous per se, but which may be used in a dangerous fashion, may also be 'dangerous weapons.' " Appleby, supra at 304. "Generally it is held to be a question for the fact finder whether the instrument was so used in a particular case."[2] Ibid."The criminal law of assault and battery by means of a dangerous weapon expresses society's desire to punish the use of an instrument which is capable of producing serious bodily harm"[3] (emphasis added). Id. at 306-307. "The meaning of 'dangerous weapon' depends to a certain extent on the context in which it is used." Id. at 305. "[T]he thrust of the offense of assault with a dangerous weapon, for example, is the outward demonstration of force which breaches the peace." Ibid."[T]he relevant behavior for the offense of assault with a dangerous weapon, G. L. c. 265, § 15B, is an outward demonstration of force, and § 15B requires only apparent ability to injure" (emphasis added). Ibid. Thus, when the object used is not dangerous per se, we look at whether the defendant's conduct was an outward demonstration of force upon the victim with an object that, as used by the defendant, has the apparent ability to injure the victim.
Assault and battery by means of a dangerous weapon "does not require specific intent to injure; it requires only general intent to do the act causing injury." Id. at 307. "Once an actor intends to commit assault with an object capable of causing bodily harm, ... he is threatening to use the instrumentality in a dangerous fashion. The offense of assault and battery by means of a dangerous weapon is complete once the threat is consummated by the application of any force upon the victim by means of the instrumentality. ... This effectuates the policy of § 15A to deter the use of 'neutral' objects in a dangerous fashion." (Emphasis added.) Id. at 308.
The defendant maintains that the evidence was insufficient to prove that the flashlight was used in a manner capable of producing serious bodily harm.[4] We disagree. The victim's testimony at trial that the defendant "jammed the flashlight" "below [her] belt" in her "frontal area," her "vagina," coupled with Cardoso's testimony that he saw the defendant "hit" the victim with the flashlight below the victim's waist is sufficient evidence that would allow the jury to reasonably infer that the flashlight, as used by the defendant, constituted a dangerous weapon. See id. at 299 (law need not wait until instrument actually does cause serious bodily harm in order to classify weapon as dangerous; defendant "hit" victim with riding crop, "barely connect[ing] with [the victim's] back"). The common understanding of the terms "jammed" and "hit" are, respectively, "to push forcibly" and "to cause to come into contact ... to apply forcefully or suddenly." Merriam-Webster's Collegiate Dictionary 669, 650 (2005). Using an object to make such contact onto an individual is well within the scope of that which G. L. c. 265, § 15A, is intended to protect against. The defendant's conduct with the flashlight was clearly an outward demonstration of force onto the victim, and his use of the flashlight in such a manner falls within the apparent ability to injure requirement. We therefore conclude that there was sufficient evidence for the jury to find that the flashlight, as used by the defendant in this case, was a dangerous weapon.
2. Witness testimony. The defendant maintains that it was error to admit the testimony of the (1) victim's coworker, Mark Simon; (2) the first responding police officer, Officer O'Brien; (3) EMT Anderson; and (4) the investigating police detective, Detective Bowen, because such testimony did not satisfy the requirements of first complaint testimony. We need not reach whether such testimony satisfies the first complaint doctrine because the testimony of Simon, Officer O'Brien, and EMT Anderson were admissible under the excited utterance exception. See Mass. G. Evid. § 803(2) (2018). While Detective Bowen's testimony does not satisfy the excited utterance exception as the victim's statements were given to Detective Bowen six days after the incident, his testimony was merely cumulative and, thus, not reversible error. See Commonwealth v. Whelton, 428 Mass. 24, 27 (1998).
The defendant did not object to the admission of the witnesses' testimony at trial. As such, our review of any error is for a substantial risk of a miscarriage of justice. See Commonwealth v. Grady, 474 Mass. 715, 716 (2016). A witness's out-of-court statements are admissible if the "utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event." Commonwealth v. Brown, 413 Mass. 693, 695 (1992) (citation omitted). A statement is considered reliable when the individual is "under the stress of extreme trauma ... and in a context where she would be expected to be truthful."[5] Id. at 696.
The record shows that there was adequate evidence to qualify the testimony of Simon, Officer O'Brien, and EMT Anderson regarding the victim's statements about the assault as excited utterances. Simon testified that the victim was "angry," and "honestly shocked." Officer O'Brien testified that when he arrived at the scene to speak to the victim about the assault, the victim "was very ... nervous, angry and upset," and "kept on screaming about how somebody had just violated her." EMT Anderson testified that when he first found the victim in the store, she was "pretty anxious," "very upset," and that she was "breathing very quickly." The victim's statements to Simon, Officer O'Brien, and EMT Anderson were made "where the traumatic event occurred," Commonwealth v. Hardy, 47 Mass. App. Ct. 679, 682 (1999), and while the victim was still under the stress of the defendant's assault and battery by means of a dangerous weapon. Her behavior and emotions make clear that the stress of the incident had not dissipated by the time she spoke with the testifying witnesses. See Commonwealth v. Wilcox, 72 Mass. App. Ct. 344, 351 (2008) (victim "under the influence of the exciting event" at time statement made regardless of one-hour lapse of time from exciting event) (citation omitted). Moreover, even if there were error, which we do not conclude, "cumulative spontaneous utterance evidence is mitigated where the person who made the out-of-court statements testifies at trial and is subject to cross-examination about her prior statements." Commonwealth v. Davis, 54 Mass. App. Ct. 756, 764 (2002). Here, the victim testified and was subject to the defendant's cross-examination. We see no error.
3. Victim's rebuttal testimony. The defendant next argues that the judge erred in admitting the victim's rebuttal testimony because, according to the defendant, such testimony constituted prior consistent statements. The defendant failed to object to the admission of the victim's rebuttal testimony, thus, our review of any error is for a substantial risk of miscarriage of justice. See Grady, 474 Mass. at 716. The prosecutor asked the victim several questions on rebuttal, including: "What did you tell [Andriana Beltre] about [the] incident? ... Was it ... the story you told us here today?"; "[W]hat you told the jurors [yesterday] -- is that what you told your coworkers?"; "Is that what you told the officers that responded to the scene?"; "Is that what you told the detective that followed up the investigation?" The victim responded "[y]es" to all of these questions. The victim's testimony, consisting of only a "yes" in response to the prosecutor's five questions, does not constitute prior consistent statements. Such testimony only confirmed her previous testimony and her conversation with Beltre, her coworkers, Officer O'Brien, and Detective Bowen. Even if it were error to admit the victim's rebuttal testimony, which we do not conclude, such testimony was merely cumulative and so minimal as to be nonprejudical. Therefore, there was no substantial risk of a miscarriage of justice. See Grady, supra.
4. Prior bad acts. The defendant argues that the admittance of prior bad act evidence, i.e., his suspension from work, was error because such evidence was not relevant and was unfairly prejudicial. The defendant also argues that the Commonwealth's references to the defendant's prior bad act in its opening statement and closing argument were unfairly prejudicial. We disagree.
The defendant failed to object to the admission of the prior bad act evidence and the Commonwealth's opening and closing statements, thus, our review of any error is for a substantial risk of a miscarriage of justice. See ibid."Evidence of prior bad acts is not admissible to show a defendant's bad character or propensity to commit the charged crime, but may be admissible if relevant for other purposes such as common scheme, pattern of operation, identity, intent, or motive." Commonwealth v. Oberle, 476 Mass. 539, 550 (2017). The judge must determine whether the probative value of the evidence outweighs any undue prejudice to the defendant. In doing so, the judge must look at the connection between the evidence and the facts of the case as well as whether the evidence is too remote in time.
Here, the Commonwealth sought to introduce evidence that the defendant had recently been fired from his job. Such evidence included testimony from the victim and from Simon. Simon testified that he "was hearing ... that [the defendant] got fired." The victim testified that the defendant "was suspended," and that during the incident the defendant whispered in the victim's ear, "I don't work here anymore. I can do whatever the fuck I want." The victim's testimony regarding the defendant's statement was admissible as a party admission. See Commonwealth v. Crayton, 470 Mass. 228, 246 n.22 (2014) ; Mass. G. Evid. § 801(d)(2)(A) (2018). Both Simon and the victim's testimony that the defendant was "fired" and "suspended," respectively, provided context to the defendant's statement to the victim and was relevant to show the defendant's state of mind and motive during the incident. See Commonwealth v. Butler, 445 Mass. 568, 573-574 (2005). We see no error, much less a substantial risk of a miscarriage of justice.
5. Ineffective assistance of counsel. Finally, the defendant argues that he received ineffective assistance of counsel. "The preferred method of resolving factual disputes concerning the conduct of the original trial" is for the defendant to file a motion for new trial. Commonwealth v. Saferian, 366 Mass. 89, 90 n.1 (1974). Without a showing of exceptional circumstances, we do not review ineffective assistance claims on direct appeal. See Commonwealth v. Zinser, 446 Mass. 807, 809 n.2 (2006). Here, no such exceptional circumstances have been shown.
Judgments affirmed.

"In resolving this issue the jury may consider the nature, size, and shape of the object as well as the way in which it is handled or controlled." Appleby, supra at 307 n.5, quoting from Commonwealth v. Tarrant, 367 Mass. 411, 416 (1975).

"The quantum of harm has been variously described as 'great bodily harm,' [Farrell, supra at 614-615]; 'serious injury,' Commonwealth v. Tarrant, 367 Mass. 411, 416 n.4 (1975) ; 'serious bodily harm,' [Appleby, 380 Mass. at 307 ]; and bodily harm that 'endangers another's safety.' Commonwealth v. Sexton, 425 Mass. 146, 149 (1997). In each case, excluding those obvious ones involving death, the harm is 'calculated to interfere with the health or comfort of the [victim]. Such hurt or injury need not be permanent, but must ... be more than merely transient and trifling.' [Farrell ], 322 Mass. at 621, quoting from Rex v. Donovan, 2 K.B. 498, 507 (1934). See Commonwealth v. LeBlanc, 3 Mass. App. Ct. 780, 780 (1975) (conviction [of] assault and battery [by means of] dangerous weapon affirmed where police officer, who was not otherwise injured, temporarily knocked off his feet by car door). The degree of bodily harm that a weapon must be capable of inflicting is the same, whether the weapon is inherently dangerous or dangerous as used. The primary difference between weapons in these two categories is in their design and purpose." (Emphasis added.) Commonwealth v. Lord, 55 Mass. App. Ct. 265, 269 n.7 (2002). " 'Bodily harm' is defined as 'any hurt or injury calculated to interfere with the health and comfort of the [victim].' " Appleby, supra at 308 n.7 (citation omitted).

It is undisputed that a flashlight, in general, is an object that is capable of being used to inflict serious bodily harm. The question in this case is whether the jury could find that the flashlight, as used by the defendant, was capable of causing serious bodily harm to the victim.

"Several factors are relevant to the determination whether a statement is admissible under this exception to the hearsay rule: the degree of excitement displayed by the person making the statements, Commonwealth v. McLaughlin, 364 Mass. 211, 222 (1973) ; whether the statement is made at the place where the traumatic event occurred or at another place, see Commonwealth v. Zagranski, 408 Mass. 278, 284-286 (1990) ; the temporal closeness of the statement to the act it explains, see Commonwealth v. Giguere, 420 Mass. 226, 233-234 (1995) ; and the degree of spontaneity. See Commonwealth v. Hampton, 351 Mass. 447, 449-450 (1966) ; Commonwealth v. Burden, 15 Mass. App. Ct. 666, 676-677 (1983)." Commonwealth v. Hardy, 47 Mass. App. Ct. 679, 682 (1999).