NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11968


COMMONWEALTH  vs.  JUSTIN GRADY.



Middlesex.     March 7, 2016. - July 12, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Controlled Substances.  Evidence, Expert opinion.  Witness,
    Expert.  Practice, Criminal, Objection, Motion in limine,
    Striking of testimony.  "School Zone" Statute.  Statute,
    Amendment, Retroactive application.




Indictments found and returned in the Superior Court
Department on May 6, 2010.

The cases were tried before Elizabeth M. Fahey, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Michele R. Moretti for the defendant.
KerryAnne Kilcoyne, Assistant District Attorney, for the
Commonwealth


DUFFLY, J.  A jury in the Superior Court convicted the

defendant of operation of a motor vehicle while under the

influence of liquor (OUI), in violation of G. L. c. 90, § 24 (1)

(a) (1); possession with intent to distribute a class B substance, in violation of G. L. c. 94C, § 32A (c); and possession with intent to distribute a class B substance in a school zone, in violation of G. L. c. 94C, § 32J. The Appeals Court affirmed the convictions in an unpublished memorandum and order pursuant to its rule 1:28, see Commonwealth v. Grady, 87 Mass. App. Ct. 1119 (2015), and we allowed the defendant's application for further appellate review.

Prior to the start of the trial, the Commonwealth and the defendant each filed a motion in limine regarding whether a substitute analyst, Kenneth Gagnon, would be allowed to testify (the analyst who tested the substance at issue having left the testing laboratory and moved out of State). Concluding that Gagnon could testify, the trial judge allowed the Commonwealth's motion and denied the defendant's motion. In response to the defendant's request that the judge "please note [his] objection," the judge responded "sure." Subsequently, at trial, Gagnon twice testified to the weight of the substance, which, the parties both now recognize, was improper. A substitute analyst may testify to his or her own opinion, but not, on direct examination, to the original analyst's test results. See Commonwealth v. Greineder, 464 Mass. 580, 586-587, cert. denied, 134 S. Ct. 166 (2013). See also Commonwealth v. Tassone, 468

Mass. 391, 399 (2014). The defendant, however, did not object to or move to strike the testimony.

The question with which we are primarily concerned is what standard of review applies to the defendant's claim, on appeal to this court, that the erroneously admitted testimony violated his confrontation rights pursuant to the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.[1] If, as the defendant argues, he preserved his appellate rights at the motion in limine stage, we would review the error to determine whether it was harmless beyond a reasonable doubt; if not, we must instead determine whether the error created a substantial risk of a miscarriage of justice. For the reasons set forth below, we conclude that, in the circumstances presented here, the defendant did not properly preserve his rights, and that therefore we review the error to determine whether it created a substantial risk of a miscarriage of justice. Having done so, we conclude that there was no such risk. We also reconsider the distinction drawn in our case law between pretrial efforts to preclude evidence on constitutional grounds, through a motion in limine or motion to suppress, and

---

[1] In the Appeals Court, the defendant did not focus on the correct standard of review. The Appeals Court identified the issue, and concluded that the erroneous admission of the testimony regarding weight must be reviewed under the substantial risk of a miscarriage of justice standard. One of the reasons that we granted further appellate review was to elaborate on this point.

pretrial efforts to preclude evidence on other grounds, and now do away with that distinction.

1. Background.[2] In the early morning hours of February 18, 2010, State police Trooper Paul Conneely stopped the defendant's motor vehicle on Alewife Brook Parkway in Cambridge after he saw the defendant turn left at a red light and then proceed over a bridge while straddling the roadway's dashed center lane. Trooper Conneely subsequently arrested the defendant for OUI and arranged to have the defendant's motor vehicle towed to the State police barracks in the Brighton section of Boston. In the course of conducting an inventory search of the vehicle, Trooper Frank Parker found a plastic bag stowed in the molded compartment at the base of the driver's side door. After he found the bag, Trooper Parker brought it to Trooper Conneely, who then had the bag submitted to the State police crime laboratory (lab) for testing. The substance contained in the bag was analyzed by Gina DeFranco, an employee at the lab.

Because DeFranco was no longer employed at the lab at the time of trial, the Commonwealth, through a motion in limine, sought to have Gagnon testify as a substitute analyst. The defendant also filed a motion in limine to preclude Gagnon from

---

[2] In his appeal to this court, the defendant does not challenge his conviction of operation of a motor vehicle while under the influence of liquor, and we therefore set forth in detail the facts and trial court proceedings relevant only to his drug convictions.

testifying. At the hearing on the motions, the defendant argued, essentially, that allowing Gagnon to testify in place of the analyst who actually tested the substance would "circumvent" his confrontation rights because he would have no opportunity, and had no previous opportunity, to cross-examine the nontestifying analyst. In response, the Commonwealth argued that Gagnon's testimony would not be a "regurgitation" of the nontestifying analyst's report; rather, he would testify to his own opinion, formed on the basis of his review of the underlying data (i.e., the nontestifying chemist's testing and analysis). On the basis that the type of testimony outlined by the Commonwealth is admissible, the judge allowed the Commonwealth's motion and denied the defendant's motion. After the judge issued her ruling, the defendant asked that she note his objection, to which she responded "sure."

Subsequently, at trial, Gagnon described his role in the case, testifying that he initially performed, at the lab, what he referred to as a "technical review." Thereafter, he reviewed the nontestifying analyst's report -- he "made sure that it was in conformity with laboratory policies and made sure that, in [his] opinion at that time, . . . what was said in the report was in fact the results that were reported for the testing on the evidence." After Gagnon provided additional testimony detailing what is involved in a technical review, including that

he spends a significant amount of his time reviewing drug cases, the Commonwealth asked him whether, based on his training and experience and his review of the underlying data in this case, he had been able to reach an opinion as to what the tested substance was.  Gagnon replied "yes."  When the Commonwealth then asked for his opinion, the defendant objected.  The judge overruled the objection and Gagnon stated that it was his opinion "the 4.40 grams of powder was found to contain cocaine" (emphasis added).  The defendant did not move to strike the testimony.  On redirect examination, the Commonwealth again asked Gagnon for his opinion, again over the defendant's objection, which the judge overruled, and Gagnon responded that in his opinion "the 4.40 grams of powder contain cocaine" (emphasis added).

2.  Discussion.  a.  Standard of review.  In the past, we have generally required a defendant to object to the admission of evidence at trial even where he or she has sought a pretrial ruling to exclude the evidence either through a motion in limine or by opposing a motion in limine.  See Commonwealth v. Whelton, 428 Mass. 24, 25 (1998), citing Commonwealth v. Keniston, 423 Mass. 304, 308 (1996) ("a motion in limine, seeking a pretrial evidentiary ruling, is insufficient to preserve appellate rights unless there is an objection at trial").  In limited circumstances, however, we have forgiven a defendant's failure

to raise a contemporaneous objection at trial.  For example, when a defendant has sought, through a motion in limine, to preclude evidence on constitutional grounds, we have treated the motion as if it were a motion to suppress and have considered the objection at the pretrial stage sufficient to preserve the defendant's appellate rights.  See Whelton, supra at 26.  See also, e.g., Commonwealth v. Santana, 465 Mass. 270, 278-280 (2013) (court reviewed erroneous admission of statements defendant made to police for harmless error where defendant argued in motion in limine that allowing statements would violate his constitutional rights to silence and to counsel but did not renew arguments, or object, at trial).[3]

Going forward, we dispense with any distinction, at the motion in limine stage, between objections based on constitutional grounds and objections based on other grounds. We will no longer require a defendant to object to the admission of evidence at trial where he or she has already sought to preclude the very same evidence at the motion in limine stage. The reason that we did not, in the past, require a defendant to object at trial to something that he or she had previously

---

[3] In addition, we have allowed a defendant's nonconstitutional objection at the motion in limine stage to excuse his failure to raise the same objection at trial when the pretrial objection was coupled with a judge's indication that the judge was "preserving" or "saving" the defendant's rights. See Commonwealth v. Aviles, 461 Mass. 60, 66 (2011), and cases cited.  We address this issue infra.

sought to preclude on constitutional grounds through a motion in limine or a motion to suppress is that, in such a case, the judge had already been made aware of, and had the opportunity to consider, the objection.  For example, in the Santana case, where the defendant had filed a motion in limine to suppress statements that he made to the police, the motion had been denied, and the defendant had not objected when those statements were introduced at trial, see Santana, 465 Mass. at 278-279, the defendant did not need to object at trial because the judge had already considered and rejected the same specific objection at the motion in limine stage.  We now recognize that the principle applies regardless of whether the objection is based on constitutional or other grounds.

We caution, however, that this approach is not as broad as it may seem.  An objection at the motion in limine stage will preserve a defendant's appellate rights only if what is objectionable at trial was specifically the subject of the motion in limine.  This case perfectly illustrates this point.[4]

The defendant argued, at the motion in limine stage, that allowing Gagnon to testify as a substitute for DeFranco would violate his confrontation rights; he did not make any other claim.  Seeking to preclude a witness from testifying altogether

---

[4] Commonwealth v. Almele, 474 Mass.     (2016), which involves improper expert witness testimony and which we also decide today, similarly illustrates the point.

(i.e., a challenge to who may testify), however, is not the same as seeking to preclude the introduction of specific information that the witness might provide (i.e., a challenge to the substance of what will be testified to).  In the former circumstance, the objection is not to the specific testimony that the witness might offer, and the judge, therefore, has not had an opportunity, prior to trial, to consider the propriety of specific testimony.  Where what is being addressed and resolved at the motion in limine stage differs from what occurs at trial, the defendant still must object at trial to preserve his or her appellate rights.

This is particularly true where the case involves a substitute analyst, as the circumstances of this case make clear.  At the hearing on the parties' motions in limine, the focus of the discussion was on, and the judge was considering, whether Gagnon should be allowed to testify at all.  The judge was not considering the specifics of what Gagnon might say, other than to determine that, in accordance with existing law, he would testify as to his own opinion on the basis of his own review of the underlying data.  See, e.g., Greineder, 464 Mass. at 584 ("[W]e draw a distinction between an expert's opinion on the one hand and the hearsay information that formed the basis of the opinion on the other, holding the former admissible and the latter inadmissible."); Commonwealth v. Barbosa, 457 Mass.

773, 783-784 (2010), cert. denied, 563 U.S. 990 (2011) (Commonwealth expert may testify to own opinion but not, on direct examination, to conclusion or opinion of second, nontestifying expert). When the judge ruled that Gagnon would be allowed to testify, the presumption was that he would do so within the parameters established by our case law. The defendant's objection at the motion stage went only to that ruling -- that is, it went only to allowing Gagnon to testify as a substitute for DeFranco. It did not go to the specific questions that would be asked or the answers that would be given in the course of that testimony.

It was incumbent on the defendant to object at trial to any specific testimony that was not directly at issue in the motion in limine and that he believed to be improper. Although the defendant objected each time the Commonwealth asked Gagnon for his opinion regarding the tested substance, the questions themselves were not improper and the judge rightly overruled the objections. Gagnon's answers, to the extent they referred to weight, however, were improper, and the defendant should have moved to strike them. Cf. Commonwealth v. Womack, 457 Mass. 268, 272-273 (2010) (where, in trial for murder in first degree, defendant failed to move to strike testimony, court reviewed its erroneous admission under standard of substantial likelihood of miscarriage of justice). See also M.S. Brodin & M. Avery,

Massachusetts Evidence § 1.3.1, at 6 (8th ed. 2007) ("A motion to strike is the proper means of eliminating an answer that is objectionable either on substantive grounds . . . or on the ground that it is non-responsive").  He did not, in short, lodge an objection either before or at trial to the very thing that he argues on appeal was improper.

Furthermore, that the judge, at the hearing on the motion in limine, responded affirmatively to the defendant's request that she note his objection does not aid the defendant where, again, the only objection at that time went solely to the judge's ruling that Gagnon could testify.  Even in those limited circumstances where a defendant's rights have been "preserved" or "saved" by a judge noting a particular objection, that objection has been to the specific evidence subsequently admitted.  See, e.g., Commonwealth v. Kee, 449 Mass. 550, 553 n.5 (2007) (where judge noted defendant's objection to denial of motion in limine and "saved" defendant's rights regarding evidence related to marked ten dollar bill, defendant's failure to object to that particular evidence at trial was not fatal).  See also Commonwealth v. Aviles, 461 Mass. 60, 66 (2011), and cases cited.

We add a second word of caution here:  a judge ought not to engage in the practice of indicating at the motion in limine stage that the judge is "saving" or "preserving" a defendant's

appellate rights.  Because a defendant must be careful to object at trial to anything that was not specifically at issue in the motion in limine, an indication from a judge that the defendant's objection is "preserved" may lull a defendant into failing to raise a necessary objection at trial.  Where the better practice is for a defendant to object at trial regardless of a motion in limine, any implication that a defendant's rights are being "preserved" may inadvertently lead to just the opposite.

When Gagnon's testimony fell outside the parameters of what was permitted for a substitute witness in the circumstances presented here, the defendant was required to move to strike that testimony in order to preserve his appellate rights. Because he failed to do so, we review the admission of the testimony to determine whether it created a substantial risk of a miscarriage of justice.  We turn now to that question.

b.  Testimony regarding weight of substance.  In reviewing an error to determine whether it created substantial risk of a miscarriage of justice, we review the evidence and the case as a whole "to determine 'if we have a serious doubt whether the result of the trial might have been different had the error not been made.'"  Commonwealth v. Azar, 435 Mass. 675, 687 (2002), quoting Commonwealth v. LeFave, 430 Mass. 169, 174 (1999).  We are satisfied, on the record here, that the result of the trial

would not have been different, and that the jury fairly concluded that the defendant was guilty of possession with intent to distribute. The Commonwealth's case was strong, and the challenged evidence as to the weight of the cocaine was not necessary to prove its case.

At trial, Trooper Parker, who found the plastic bag of drugs in the defendant's vehicle, testified that he observed that the bag had a twist tie at the top and a number of plastic bags inside, each of which had a twist tie and contained a white powdery substance. Trooper Conneely testified similarly. He stated that Trooper Parker brought him a clear plastic bag that contained twelve plastic bags, which Trooper Conneely referred to as "twists" and which contained a white powder. Trooper Conneely also testified that, on the basis of his training and experience, the white powder inside the plastic bags found in the defendant's vehicle was consistent with cocaine and that "twists" are the most common "street-level" packaging for cocaine.

Detective James Hyde of the Somerville police department, who was not involved in the defendant's arrest, provided expert testimony on the manner in which cocaine is generally packaged for street-level distribution. He stated that small amounts of cocaine are packaged in individual plastic bags, and that those bags, in turn, may be "double-bag[ged]" in a larger plastic bag.

He also stated that the most common amount of cocaine that he sees for personal use at the street level in the Cambridge and Somerville area (the defendant was arrested in Cambridge) is usually one-half gram or one gram, although from time to time he might see as much as an "eight-ball" (three and one-half grams). He testified that each of the twelve individual bags of cocaine, entered as an exhibit at trial, contained in the "ballpark" of one-half gram or one gram amounts that would sell for forty to sixty dollars (for one-half gram) or as much as one hundred dollars (for one gram). He further indicated that it would not be consistent with personal use to purchase twelve individual bags of this size because it would not be "cost effective." A personal user could purchase an "eight ball" for $150 to $180, but a dealer who has cocaine packaged in one-half gram amounts is not going to sell the user seven individual bags (which would amount to three and one-half grams, or an "eight ball") for that amount when the dealer could instead sell them separately for a total of approximately $350.[5]

---

[5] The lack of any personal-use paraphernalia was also, in Detective James Hyde's opinion, more consistent with an intent to distribute than with personal use. On cross-examination, however, Hyde agreed that, in terms of personal-use paraphernalia for powder cocaine, when a user first purchases the cocaine, the user does not always have something on his or her person for purposes of using the cocaine right away, and, further, that something as simple as a dollar bill would suffice for ingesting the drug. The point probably has limited significance here because the defendant did not argue at trial

Furthermore, to the extent that the defendant now argues that his conviction cannot stand because there was no evidence as to the weight of the drugs other than Gagnon's erroneously admitted testimony, the argument is misplaced. The weight of the drugs is not an element of the crime of possession with intent to distribute. This case, then, is not akin to those on which the defendant relies involving convictions of drug trafficking -- a crime for which weight is an element -- where the only evidence as to weight was erroneously admitted, leaving the jury with no reliable means to assess an element of the crime. See, e.g., Commonwealth v. Montoya, 464 Mass. 566, 567 (2013) (erroneous admission of certificates of drug analysis, which were only reliable evidence of weight, not harmless beyond reasonable doubt). We perceive no substantial risk of a miscarriage of justice stemming from the erroneous admission of the testimony that referred to weight in this case.

c. Testimony regarding identity of substance. In addition to his argument regarding the erroneous admission of Gagnon's testimony regarding weight, the defendant contends that the admission of Gagnon's testimony regarding the composition of the substance was erroneous. There was no error. Our law allows a

that the drugs were intended only for personal use. Rather, in addressing the drug charges in his closing argument, he focused mainly on his assertion that the drugs were not his but rather belonged to the passenger who was in the motor vehicle with him when he was stopped and arrested.

witness such as Gagnon, who did not himself conduct the relevant tests, to testify to his own opinion based on the data generated by the nontestifying analyst.  See, e.g. Greineder, 464 Mass. at 603.  In the Greineder case, we confirmed established law that "[e]xpert opinion testimony, even that which relies for its basis on . . . test results of a nontestifying analyst not admitted in evidence, does not violate a criminal defendant's right to confront witnesses against him under either the Sixth Amendment or art. 12 of the Massachusetts Declaration of Rights."  Id.

Gagnon properly testified to his own opinion regarding the composition of the tested substance.  That opinion was formed on the basis of the tests conducted, and the results reached, by the nontestifying analyst, which Gagnon reviewed at the time the tests were conducted as well as prior to testifying at trial.  Furthermore, the defendant thoroughly and meaningfully cross-examined Gagnon.  See Greineder, 464 Mass. at 596-598 (considering meaningful cross-examination of substitute analyst).  He elicited testimony from Gagnon that, among other things, Gagnon did not directly observe the testing conducted by the nontestifying analyst; that Gagnon did not speak to the nontestifying analyst about the steps she had taken in conducting her analysis; and that "there is room for human error."  Gagnon's opinion testimony regarding the composition of

the substance -- that it was cocaine -- did not violate the defendant's right to confront the witness against him, and was not, thus, erroneously admitted.

d. School zone violation. Finally, the defendant urges us to revisit our decision in Commonwealth v. Thompson, 470 Mass. 1008 (2014), considering the retroactivity of St. 2012, c. 192, § 30, which amended G. L. c. 94C, § 32J, the school zone statute. In Commonwealth v. Bradley, 466 Mass. 551, 561 (2013), we concluded that the amendment "applies to all cases alleging a school zone violation for which a guilty plea had not been accepted or conviction entered as of" August 2, 2012, the effective date of the amendment. Subsequently, in the Thompson case, we declined to extend that rule to cases where a defendant has been tried and convicted before the effective date but whose direct appeal was still pending on that date. Thompson, supra at 1010. The defendant here falls into the Thompson category, and we see no reason to revisit our decision. The amendment does not apply to him.

3. Conclusion. In the future, a defendant's pretrial objection, at the motion to suppress as well as the motion in limine stage, will preserve the defendant's appellate rights. The basis for the objection -- whether constitutional or not -- will no longer matter, but, as has always been the case, the preservation of appellate rights will apply only to what is

specifically addressed in those proceedings.  In circumstances like those presented here, where prior to trial a defendant seeks to preclude a particular witness from testifying on constitutional grounds, the defendant must also object at trial to any questions that seek to elicit testimony that falls outside of what was addressed at the pretrial stage and move to strike the specific testimony once it has been elicited in order to preserve his or her appellate rights.  To the extent that the defendant failed to do that, we have reviewed the admission of the testimony to determine whether it created a substantial risk of a miscarriage of justice.  For the reasons discussed above, we conclude that it did not.[6]

Judgments affirmed.

---

[6] The defendant raised additional issues in the Appeals Court, regarding the judge's charge to the jury, that he has not raised in this court.  Because he has not raised them here, we have not considered them.