NOTICE:   Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-825

COMMONWEALTH

vs.

ELANA GORDON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Convicted after a Superior Court jury trial of delivering a class B controlled substance to a prisoner (G. L. c. 268, § 28), the defendant appeals.[1]  She argues that the trial judge erred by admitting audio recordings of two jail calls between the defendant, who is an attorney, and Jassel Castillo, an inmate at the Plymouth County house of correction, and by permitting a substitute drug analyst to opine that a substance contained buprenorphine, a class B substance.  The defendant further

---

[1] A count for possession of a class B substance with intent to distribute (G. L. c. 94C, § 32A (a)) was dismissed as duplicative after trial.  A count for conspiracy to violate the drug laws (G. L. c. 94C, § 40) was placed on file with the defendant's consent after a change of plea, and the defendant has not raised any issues related to that conviction on appeal. See Mass. R. Crim. P. 28 (e), 453 Mass. 1501 (2009). Accordingly, the defendant's appeal from that conviction is not before us and we do not address it.  See Commonwealth v. Brown, 456 Mass. 708, 709 n.1 (2010).

contends that a substantial risk of a miscarriage of justice arose when correction officers testified that attorneys were prohibited from leaving paperwork with inmates, and when a State police trooper testified that the defendant's cell phone "had been reset." She also claims that her trial counsel was ineffective when he argued in closing that the defendant showed "terrible judgment" by delivering envelopes to an inmate, but did not know that they contained drugs. We affirm.

Background. On May 3, 2018, Castillo made two phone calls from the Plymouth County house of correction to his sister, who added the defendant to each call, creating three-way calls. During those calls, Castillo instructed the defendant to visit Noah Bell, who was also an inmate at the house of correction, on the following day. Castillo told the defendant, "Don't call me down tomorrow." The defendant then asked Castillo, "What do I have this paperwork for?" and Castillo replied, "Just give it to him. He'll give it to me." Castillo also told the defendant, "Just come take care of this thing tomorrow."

The next day, May 4, 2018, the defendant went to the house of correction and met with Bell. During their meeting, she gave two manila envelopes to Bell. Afterwards, officers searched Bell and found in the envelopes sixty-one strips of Suboxone, which contains buprenorphine, a class B substance.

Police arrested the defendant and seized her cell phone. Attempting to search the cell phone, a State police trooper powered it on. The phone showed a welcome screen, indicating that it had been reset.

The defense theory was that the defendant did not know that the envelopes contained Suboxone. The defendant testified that she "had no idea" there was anything other than paperwork in the envelopes which she gave to Bell. Defense counsel argued in both opening and closing that the defendant "had no knowledge" that she was bringing drugs into the jail.

Discussion. Jail calls. The defendant argues that the judge erred in admitting the audio recordings of the two jail calls between the defendant, Castillo, and Castillo's sister. The defendant claims that the prejudicial impact of the jail calls substantially outweighed their probative value because in them she used obscenities.

The defendant moved in limine to exclude the jail calls, asserting that they were improper "character evidence."[2] After the prosecutor explained that the jail calls showed the defendant's knowledge that she was delivering drugs to Bell, the

---

[2] The defendant also argued that the jail calls contained hearsay. At the prosecutor's request, the judge instructed the jury to disregard any conversation between Castillo and his sister in Spanish. The defendant does not raise the hearsay issue on appeal, and so we do not consider it.

judge ruled to admit the jail calls. We conclude that the judge did not abuse his discretion in determining that the jail calls were probative "to prove a plan to bring drugs" into the house of correction.

A trial judge has "broad discretion" to determine whether "the risk of prejudice substantially outweighs the probative value of the evidence." Commonwealth v. Fan, 490 Mass. 433, 444 (2022). See Mass. G. Evid. § 403 (2023). A trial judge's evidentiary ruling is reversed only if the judge made "a clear error of judgment" which "falls outside the range of reasonable alternatives" (citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

The judge heard extensive argument from both parties regarding the admissibility of the jail calls, considered the representations of both parties as to the calls' contents, and properly instructed the jury to consider the statements of persons other than the defendant on the calls only as to "what knowledge [the defendant] would have and to give context to any statements that she made." In those circumstances, we discern no error in the judge's implicit determination that the probative value of the jail calls outweighed any prejudice to the defendant, and no abuse of discretion in their admission. See Commonwealth v. Gardner, 102 Mass. App. Ct. 299, 306-307 (2023).

4

The defendant argues that the judge did not conduct the balancing test to weigh the prejudicial effect of the jail calls evidence against their probative value because, as a result of technical difficulties, he did not listen to the jail calls before they were played for the jury. The judge relied on the prosecutor's offer of proof about the contents of the jail calls, which was accurate. Based on that offer of proof, the judge could exercise his discretion to admit the jail calls, which were not the sort of highly inflammatory evidence that a judge might be required to review first. Contrast Commonwealth v. Carey, 463 Mass. 378, 390-391 (2012) (judge should have viewed "highly inflammatory" video of strangulation before admitting it).

For the first time on appeal, the defendant argues that because the jail calls included her "swearing repeatedly and acting unprofessional," their prejudicial impact outweighed their probative value. Because the defendant did not object on those grounds or request that swear words be redacted, we doubt that she preserved that claim for appellate review. We need not resolve that doubt, because even if the defendant had objected on those grounds at trial, the judge would not have been required to rule that any resulting prejudice outweighed the probative value of the calls. See Commonwealth v. Rosa, 468 Mass. 231, 241-242 (2014) (jail call in which defendant used

5

racial epithet as term of familiarity not unduly prejudicial);
Commonwealth v. Mejia, 88 Mass. App. Ct. 227, 238 (2015) (jail
call in which defendant used offensive language not unduly
prejudicial).

Substitute drug analyst. The defendant argues that her
confrontation rights were violated when a substitute drug
analyst opined that the substance in the envelopes that the
defendant gave to Bell was Suboxone, a combination of
buprenorphine and naloxone.

A substitute drug analyst may testify about the
identification of a substance provided that she "reviewed the
nontestifying analyst's work, . . . conducted an independent
evaluation of the data[,] . . . [and] then 'expressed her own
opinion, and did not merely act as a conduit for the opinions of
others.'" Commonwealth v. Greineder, 464 Mass. 580, 595 (2013),
quoting Commonwealth v. Greineder, 458 Mass. 207, 236 (2010).

The substitute drug analyst in this case properly
"described the analytic process that [the nontestifying
analyst] . . . would have followed, and [her] own opinions that
she had formed independently and directly from the case review
and analysis she herself had performed." Commonwealth v.
Chappell, 473 Mass. 191, 202 (2015) (testimony of DNA analyst's
supervisor admissible). See Commonwealth v. Gonzalez, 93 Mass.
App. Ct. 6, 13 (2018) (testimony of substitute chemist

6

admissible).  The defendant cross-examined the substitute drug analyst regarding the basis on which she formed her opinion, her reliance on data generated by the nontestifying analyst, and the fact that she did not personally test the evidence.  We discern no error or violation of the defendant's confrontation rights.

The defendant also argues that the substitute drug analyst improperly testified that buprenorphine is a class B controlled substance.  Since the defendant did not object to this testimony at trial, we review to determine whether any error created a substantial risk of a miscarriage of justice.  See Commonwealth v. Gomes, 459 Mass. 194, 204 (2011).  Based on her education and experience, the substitute drug analyst testified that buprenorphine is a class B controlled substance.  No substantial risk of a miscarriage of justice arose.

Testimony of correction officers about jail policies.  The defendant argues that two correction officers improperly testified that rules prohibited attorneys from leaving paperwork with inmates and prohibited inmates from making three-way calls.  The defendant did not object to this testimony at trial, so we review its admission to determine whether any error created a substantial risk of a miscarriage of justice.  See Commonwealth v. Grady, 474 Mass. 715, 721-722 (2016).

The defendant contends that the correction officers' testimony that attorneys were forbidden from leaving paperwork

with inmates was inaccurate.  For the first time on appeal, the defendant points to a Massachusetts Department of Correction regulation providing that attorneys are "permitted to leave legal papers or legal documents with inmates."  103 Code Mass. Regs. § 486.09(2) (2015).[3]

Because the defendant did not raise this claim in the trial court, on the record before us we cannot ascertain whether the Plymouth County house of correction had a policy that differed from the regulation, or whether the correction officers were uninformed or mistaken about the regulation.  Where the defendant's theory at trial was that she did not know that the envelopes she gave to Bell contained Suboxone, it would not have helped her defense to inform the jury of a regulation that gave attorneys more leeway than other visitors to transmit documents to inmates.  The testimony did not create a substantial risk of a miscarriage of justice.  Contrast Commonwealth v. Ware, 482 Mass. 717, 725-726, 729-730 (2019) (vacating convictions because testimony was "blatantly false" and central to Commonwealth's case).

Testimony that the defendant's cell phone had been "reset."  The defendant argues that testimony about the examination of her cell phone was unduly prejudicial because it permitted the jury

_____

[3] The defendant quotes from that regulation, but miscites it as 103 Code Mass. Regs. § 486.08(2) (2015).

to infer that she had destroyed evidence.  State Police Lieutenant Frank Driscoll testified that when he attempted to extract data from the defendant's cell phone, "As I powered on the phone, it had been reset . . . much like as if you get a cell phone out of a box from [the] Apple store, it had that main welcome screen, so it had been reset or never set up."  The defendant did not object, and so we consider the issue to determine if it created a substantial risk of a miscarriage of justice.

The defendant maintains that she preserved this issue for appellate review because at a pretrial hearing on her motion to suppress her cell phone, defense counsel commented that it could not be fairly inferred that the defendant had remotely "wiped" the cell phone.[4]  Where the issue before the motion judge at that hearing was whether police unlawfully seized and searched the defendant's cell phone, defense counsel's comment did not preserve for appellate review the defendant's present claim that the testimony that the phone "had been reset" was unduly prejudicial.  See Grady, 474 Mass. at 719 ("An objection at the motion in limine stage will preserve a defendant's appellate

_____

[4] The motion to suppress was heard by a different judge, who denied the motion, concluding after a hearing that the defendant had consented to the search of her cell phone.

9

rights only if what is objectionable at trial was specifically the subject of the motion in limine").

No substantial risk of a miscarriage of justice arose from the trooper's testimony that the display of a "welcome" screen on the defendant's phone evidenced that the phone had either "been reset or never set up," and that phones can be "remotely reset."[5]  This testimony had a "rational tendency" to prove the defendant's knowledge that the envelopes she delivered contained drugs, as evidence of consciousness of guilt.  Commonwealth v. Yat Fung Ng, 491 Mass. 247, 264 (2023), quoting Carey, 463 Mass. at 387.

Defense counsel's closing argument.  For the first time on appeal, the defendant argues that trial counsel was ineffective in his closing argument.  Because the defendant did not raise this claim in a motion for new trial, the record before us does not contain any information about trial counsel's strategy in making his closing argument, or the judge's assessment of its likely impact on the jury.

"The occasions when a court can resolve an ineffective assistance claim on direct appeal are exceptional."  Commonwealth v. Zinser, 446 Mass. 807, 809 n.2 (2006).  Courts

---

[5] Contrary to the assertions in the defendant's brief, at no point did the trooper testify that the phone had been "wiped" or that the defendant was the person who reset it.

can consider such claims only when "the factual basis of the claim appears indisputably on the trial record." Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994).  The burden rests with the defendant to show that counsel's behavior fell "measurably below that which might be expected from an ordinary fallible lawyer" and "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

Defense counsel argued that the defendant showed "terrible judgment . . . .  You're not supposed to give anything to an inmate.  You don't do it. . . .  It's wrong.  It's stupid. . . . I've been practicing law for [thirty-one] years, and the lack of judgment in this case by my client is breathtaking, astounding. . . .  I can't understand it."  Defense counsel may well have argued that the defendant had used poor judgment in delivering the envelopes to Bell at Castillo's request because, by making that concession, the jury might be more likely to believe the defendant's claim that she did not know that the envelopes contained drugs.  On this record, we cannot conclude that the argument fell below the Saferian standard.  "[I]t is far too easy to examine

11

a transcript and point to ways to 'do it better'" (citations omitted).  Commonwealth v. Moseley, 483 Mass. 295, 308 (2019).

Judgment affirmed.

By the Court (Green, C.J.,
  Milkey & Grant, JJ.[6]),

*Joseph F. Stanton*

Clerk

Entered:  November 8, 2023.

---

[6] The panelists are listed in order of seniority.