NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-938

COMMONWEALTH

vs.

RYLAN R. LEMAINE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court jury convicted the defendant of assault and battery on a pregnant person, G. L. c. 265, § 13A (b) (ii).[1] On appeal, the defendant claims error in an amendment to the date of the complaint and the admission of prior bad act evidence.  We affirm.

Background.  The victim and the defendant began dating in 2015 or 2016.  She had her first child with him in 2017.  In late 2018, the victim again became pregnant by the defendant. In March 2019, the victim, the defendant, their daughter, and

_____

[1] The jury acquitted the defendant of strangulation or suffocation, G. L. c. 265, § 15D (b).

the defendant's girlfriend lived together at the Days Inn in Methuen.

On a date in March 2019, "play fighting" between the victim and the defendant turned into an argument. When the victim tried to walk away, the defendant "came behind [her] and put [her] in a headlock." She started to choke and "dug [her] nails as hard as [she] could into his arm until he let go." The defendant grabbed the victim's arm, shoved her into the bed, and pushed her shoulders down from the bed onto the floor, causing her head to hit a nightstand. He then grabbed her hair and pushed her to the floor, before flipping her over and sitting on her lap. At some point, the victim got back onto the bed, while the defendant continued to yell at her and hold her hands down. The victim slid off the bed and the defendant tried to stop her as she got to her knees. The victim headbutted the defendant and he pretended to pass out, but then the defendant "sprung up . . . and ran and slammed the hotel door."

The girlfriend witnessed the beginning of the assault but locked herself and the child in the bathroom once it escalated. She remained in the bathroom until she "heard the yelling quiet down."

Discussion. 1. Amendment to the complaint. Just prior to empaneling the jury, the judge allowed, at the Commonwealth's request and without objection, an amendment to the date of the

offense on the complaints.[2]  The complaints listed the date as September 4, 2019, which was the date on which the victim made a report to police.  The parties, however, agreed that the incident underlying the complaints occurred on a single, unknown date in March 2019.  The complaints thus were amended to a "diverse date in March 2019" and subsequently read to the jury as "on diverse dates in March of 2019 [emphasis added]."  We disagree with the defendant's assertion that, as so conveyed, the amended complaints caused the jury to believe the defendant was charged with "some span of assaults or assaultive behavior throughout March 2019."

The jury heard the phrase "on diverse dates" just after they were sworn, but it was immediately made clear in both the prosecutor's and defense counsel's opening statements that the allegations involved one incident at the Days Inn in Methuen.  Witness testimony unambiguously referred to "one night in particular," "this incident," "an exact date," "a specific date," "an altercation," "this altercation," "that night in March of 2019," "that day," and "an incident."  During closing arguments, both attorneys discussed events that occurred on a

_____

[2] The defendant was charged based on a single incident in two separate complaints, which were joined for trial.  It does not appear that the amended date of offense was recorded on the complaints.

single night in March 2019.  Finally, the jury did not raise the date in its question regarding the elements of the offenses.

Although the phrasing of the amendment may have been erroneous,[3] the defendant has not established a "serious doubt whether the result of the trial might have been different had the error not been made."  Commonwealth v. Kelly, 470 Mass. 682, 697 (2015) (quotations omitted).  We thus conclude there was no substantial risk of a miscarriage of justice created by the amended complaints.  See id.

2.  Admission of prior bad act evidence.  Before trial, the Commonwealth moved to introduce evidence of three prior instances on which the defendant physically assaulted the victim, along with photographs of injuries the victim suffered on each occasion.  The Commonwealth argued that the evidence was relevant to show the hostile nature of the relationship between the defendant and the victim; to counter any claim of accident, mistake, or self-defense; and to show a continuing pattern of behavior by the defendant.  The defendant objected on the basis that the evidence "could confuse the jury" and that the risk of unfair prejudice therefore outweighed the probative value of the evidence.  The judge allowed the Commonwealth to "bring up that

_____

[3] Properly amended, the complaint should have read, "on a date in March 2019."

4

there was a hostile relationship," but ruled that specific acts or details of the defendant's prior assaults, including "[g]raphic pictures," were unduly prejudicial and thus excluded.

During trial, the victim testified that, on the night of the assault, she and the defendant argued and she turned to walk away from him. The victim went on to explain,

> "I was done, and I knew it was either going to -- when I turned around, I knew it was either going to continue and I should just hold my breath, because that was usually when I would need to take whatever last breath I needed to, to hold off for a bit. Because he would come behind me. It was not the first time that he would come behind me and try to put me in a headlock. So if I wanted to end a[n] argument or try to see if we were in a good enough place that he would just let it go, and I tried to turn away, I would usually take one big breath and cross my fingers that he was not going to walk behind me."

The defendant's girlfriend testified that she was in and out of the room while the victim and defendant fought. She stated that she had "broken things up" between them on prior occasions, and that night she "could tell they had just fought" because the victim's "hair was messed up," and she had "seen [the victim] like that before." The defendant asserts that both the victim's and the girlfriend's testimony violated the judge's order because they communicated to the jury that the defendant "had specifically assaulted her in the same way on prior occasions." The defendant did not object to either witness's testimony, move to strike it, or request a limiting instruction from the judge.

5

The decision whether to admit prior bad acts is within the trial judge's discretion. Commonwealth v. Gonzalez, 469 Mass. 410, 421 (2014). We review any unpreserved error in the admission of evidence to determine whether it created a substantial risk of a miscarriage of justice. Commonwealth v. Grady, 474 Mass. 715, 721-722 (2016). The defendant argues that our review is for prejudicial error because he preserved his appellate rights by objecting to the Commonwealth's motion in limine to admit prior bad acts. We disagree. "An objection at the motion in limine stage will preserve a defendant's appellate rights only if what is objectionable at trial was specifically the subject of the motion in limine." Id. at 719. Moreover, preservation of appellate rights requires that the motion in limine was heard and denied. Id. Here, the judge agreed with the defendant's request to exclude evidence of specific prior incidents of abuse; thus, his objection was not preserved.

Regardless of which standard we apply, however, we discern no reversible error. The victim testified at length and in detail about her relationship with the defendant and the assault at the Days Inn "the last time [she] saw [him]." Much of her testimony was corroborated by the girlfriend. The victim's insinuation that the defendant had assaulted her previously was brief and passing. This case rose and fell on the victim's credibility, and her intimation that something similar had

6

happened before does not change that calculus. Moreover, the defendant's argument that the jury may have been swayed by evidence that "appear[ed] to be nearly identical to the charged offense" is belied by the verdict acquitting the defendant of strangulation. See Commonwealth v. Gardner, 102 Mass. App. Ct. 299, 311 (2023).

We disagree with the defendant that the girlfriend's testimony that she had previously broken up fights between the victim and defendant exceeded the bounds of describing the parties' hostile relationship, as it was neither specific nor detailed.[4] Even if it did violate the judge's order, the testimony added little of substance to the Commonwealth's case. Ultimately, we conclude that there was no substantial risk of a miscarriage of justice from the admission of the bad act evidence. See Commonwealth v. Proia, 92 Mass. App. Ct. 824, 830 & n.9 (2018) ("This is not an instance where the prior bad act evidence overwhelmed the case"). Furthermore, because the challenged testimony "did not influence the jury, or had but very slight effect," Commonwealth v. Alvarez, 480 Mass. 299, 305

---

[4] The defendant does not contest the judge's ruling that evidence of the hostile relationship between the victim and defendant was admissible.

(2018) (quotation omitted), the defendant's claim is unavailing even under the more favorable prejudicial error standard.

Judgment affirmed.

By the Court (Shin, Ditkoff & Brennan, JJ.[5]),

*Paul Little*

Clerk

Entered:  October 25, 2024.

---

[5] The panelists are listed in order of seniority.