SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. ANTONIO NASCIMENTO-DEPINA

 
 Docket:
 SJC-13664
 
 
 Dates:
 January 8, 2025 - May 8, 2025
 
 
 Present:
 Present: Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Bristol
 

 
 Keywords:
 Rape. Indecent Assault and Battery. Constitutional Law, Confrontation of witnesses. Practice, Criminal, Confrontation of witnesses, Witness, Hearsay, Instructions to jury. Evidence, Expert opinion, Hearsay, Prior misconduct, Relevancy and materiality. Witness, Expert. Deoxyribonucleic Acid.
 
 

       Indictments found and returned in the Superior Court Department on November 29, 2018.
      The cases were tried before Daniel J. O'Shea, J.
      The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.
      Brad P. Bennion for the defendant.
      David B. Mark, Assistant District Attorney, for the Commonwealth.
      Christopher DeMayo, for Elana Gordon, amicus curiae, submitted a brief.
      WOLOHOJIAN, J.  The defendant was convicted by a jury of aggravated rape of a child, G. L. c. 265, § 23A, and indecent assault and battery on a child under fourteen years old, G. L. c. 265, § 13B.  The charges stem from the defendant's rape and sexual assault of his twelve year old granddaughter.  In this direct appeal from his convictions, the defendant raises two arguments.  First, he argues that a reviewing analyst's testimony violated his confrontation rights under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights because, on direct examination, a reviewing analyst testified about the findings and conclusions of a nontestifying analyst concerning deoxyribonucleic acid (DNA) testing.  The Commonwealth acknowledges, and we agree, that the testimony was admitted in error.  See Commonwealth v. Greineder, 464 Mass. 580, 592, cert. denied, 571 U.S. 865 (2013).  But we conclude that the error did not result in a substantial risk of a miscarriage of justice in the circumstances of this case.  Second, the defendant argues that the judge abused his discretion in admitting evidence that the defendant had sexually assaulted the victim on an earlier occasion.  We conclude that the judge acted within the permissible bounds of his discretion in admitting the prior bad act evidence.  We accordingly affirm the judgments.[1] 
      Background.  We summarize the facts as the jury could have found them, reserving additional facts for our later discussion of the issues on appeal.  The victim immigrated to the United States from Cape Verde when she was eleven years old.  She initially lived in Chelsea with her mother, her brother, and the defendant (who was her maternal grandfather).  One year later, the family moved to Taunton, where the Department of Children and Families (DCF) became involved with the family after a report that the victim's mother had physically abused her.
      When the victim was twelve years old and the defendant was fifty-eight, the defendant took her into his bedroom while her mother was out of the house.  The defendant put the victim on his bed, touched the victim's breasts, pulled down her pajama pants and underwear, and rubbed his penis against her vagina.  He inserted his penis in her "butthole where I poop."  He also digitally penetrated the victim's vagina, and used his fingers to spread the "lips thing" of her vagina in order to penetrate her with his penis.  After the victim began to cry, the defendant removed his penis from the victim's vagina, and she saw "white things start[] coming out of his penis" onto the bedding.  The defendant then sent the victim to her mother's room and told her not to tell anyone what had happened.
      A few days later, a DCF social worker visited the victim's home as part of her ongoing involvement with the family due to the mother's reported physical abuse of the victim.  The social worker, whom the Commonwealth called as the first complaint witness, testified that in response to a general inquiry into her well-being, the victim said that the defendant was "touching" her.  This information was immediately reported to the Taunton police, who came to the house and spoke with both the victim and the social worker.  The victim told police about the defendant's ejaculation onto the bedding, and based on this information, the police collected the bedding and sent it to be tested by the State police crime laboratory (crime lab).  That testing confirmed the presence of the defendant's DNA in at least one sperm sample obtained from the bedding, and excluded the victim as a contributor to either of the two unknown DNA profiles obtained from the bedding.
      The defense at trial, as expressed in trial counsel's closing argument and developed through cross-examination, was that the DNA evidence contradicted the victim's testimony and supported his theory that the victim had fabricated the assault after having seen the defendant having intercourse with his girlfriend.  The prosecutor's closing, while acknowledging the absence of the victim's DNA on the bedding, nonetheless asked the jury to credit the victim's testimony concerning the assault.
      The jury convicted the defendant of two counts of aggravated rape of a child, G. L. c. 265, § 23A, and three counts of indecent assault and battery on a child under fourteen years old, G. L. c. 265, § 13B.  The defendant filed a timely notice of appeal, and we transferred the case on our own initiative from the Appeals Court. 
      Discussion.  1.  Confrontation clause.  Before reaching the substance of the defendant's argument that admitting the DNA evidence violated his confrontation rights, we set out the pertinent background bearing on this claim.
      Prior to trial, the Commonwealth moved to exclude any evidence concerning the DNA obtained from the bedding.  As grounds for the motion, the Commonwealth asserted that testing had determined that a semen stain on the bedding was consistent with the defendant's DNA profile, but that a female DNA profile located on the bedding did not "match" the victim's DNA.  The Commonwealth contended that the fact that the defendant was sexually active with someone else was irrelevant to whether he had raped the victim and, therefore, the DNA evidence should be excluded.
      In the parties' joint pretrial memorandum, the Commonwealth identified Kira Snyder of the crime lab as a potential witness.  Snyder was the analyst who tested and analyzed the DNA obtained from the defendant's bedding and prepared a report containing the results of the testing and her conclusions.  By the time of trial, however, Snyder (for reasons that are not disclosed in the record) was unavailable to testify.  Although the record does not explicitly reveal how or when, it is apparent that by the time of trial defense counsel had been notified of Snyder's unavailability and of the Commonwealth's proposal to substitute Jessica Hart, who was Snyder's supervisor and had performed the technical review of Snyder's report.  See Commonwealth v. Souza, 494 Mass. 705, 718-719 (2024) (describing role of technical reviewer).
      The defendant did not object to Hart being substituted to testify in lieu of Snyder.  Indeed, it was defense counsel who notified the judge of the substitution and stated that he anticipated calling Hart to testify on behalf of the defendant were the Commonwealth not to call her in its case-in-chief.  The judge denied the Commonwealth's motion to exclude the DNA evidence.
      As it turned out, it was the Commonwealth -- not the defendant -- who called Hart to testify, and the defendant did not object either to her substitution for Snyder or to her testimony in any respect.  On direct examination, Hart testified concerning her role as the technical reviewer, explaining that she reviewed Snyder's file to ensure that "everything worked as it should have" with respect to the steps that were taken and the controls that were used.  She also checked the comparisons made to known DNA standards and the accuracy of the statistics in Snyder's report.  As she put it, Hart checked to make sure that "all of the information that is being reported both in the case file and the report is accurate and has followed all of our policies and procedures of the lab."  Also on direct examination, Hart was asked to explain DNA terminology and scientific concepts in general, and to describe the customary procedures and protocols of the crime lab.
      Hart did not herself conduct any DNA testing or analysis.  Nonetheless, the prosecutor on direct examination elicited from Hart the information, results, and conclusions contained in Snyder's report.  More specifically, the prosecutor elicited testimony that Snyder's report referenced that (1) two swabs and scraping items and two cutting items had been taken from the defendant's bedding, (2) those samples tested positive for blood and semen, (3) Snyder had determined that the DNA on the bedding "matched" the defendant, and (4) the expected frequency of occurrence of the male DNA profile located on the bedding was one in 12.06 decillion unrelated individuals in the general population.  Hart also testified that Snyder excluded the victim as a source of the DNA located on the bedding.  Hart offered no independent opinion of her own concerning the DNA testing or results.  Instead, she relayed Snyder's testing, analyses, and conclusions as they were contained in Snyder's report, which Hart appears to have consulted throughout her testimony on direct examination.
      On cross-examination, defense counsel first established that Snyder's report included results that had been validated using a new technology to retest the original results excluding the victim as a match for the DNA on the bedding.  With that fact established, defense counsel asked that Snyder's report be admitted in evidence.  The prosecutor objected on the ground that the report was inadmissible hearsay.  After hearing from both sides, the judge admitted the report.
      Defense counsel then spent the remainder of his cross-examination highlighting the conclusions of the report, focusing especially on the fact that the victim's DNA was excluded as a contributor to the two unknown DNA profiles located on the bedding.  The prosecutor conducted no redirect examination of Hart.
      For the first time on appeal, the defendant argues that Hart's testimony concerning the contents of Snyder's report violated his rights under the Sixth Amendment and art. 12 to confront the witnesses against him.  See Bullcoming v. New Mexico, 564 U.S. 647, 657-658 (2011); Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009); Commonwealth v. Seino, 479 Mass. 463, 467 (2018).  The argument was not preserved below, see Melendez-Diaz, 557 U.S. at 314 n.3 (right to confrontation may be waived), and, therefore, we review to determine whether there was error and, if so, whether it resulted in a substantial risk of a miscarriage of justice, see Commonwealth v. Curran, 488 Mass. 792, 796 (2021) (standard of review of unpreserved confrontation clause claim).  A substantial risk of a miscarriage of justice occurs when we have a "serious doubt whether the result of the trial might have been different had the error not been made."  Commonwealth v. Valentin, 470 Mass. 186, 189 (2014), quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005).
      The Commonwealth acknowledges, and we agree, that Hart's testimony on direct examination concerning the contents of Snyder's report was erroneously admitted.[2]  See Greineder, 464 Mass. at 592.  Since well before 2022, when the trial in this case took place, this court has held that "an expert witness is not permitted to testify on direct examination to facts or data that another, nontestifying expert has generated, or to the nontestifying expert's own opinion, even though this information may be an important part of the basis of the testifying expert's opinion."  Commonwealth v. Chappell, 473 Mass. 191, 202 (2015).  As we explained in Greineder, 464 Mass. at 592, under our law of evidence, "an expert's testimony to the fact of a nontestifying analyst's test results is hearsay," and "we do not allow expert witnesses to testify to the specifics of hearsay information underlying the opinion on direct examination."  See Department of Youth Servs. v. A Juvenile, 398 Mass. 516, 531 (1986).  Snyder's report was not only hearsay, it was also testimonial; the report was prepared for use in connection with this prosecution.  See Melendez-Diaz, 557 U.S. at 324 (hearsay statements are testimonial where prepared specifically for use at defendant's trial).  Accordingly, Hart should not have been permitted to testify on direct examination to Snyder's testing, findings, analyses, or conclusions where the defendant did not have the opportunity to cross-examine Snyder beforehand.  Id. at 309.  Bullcoming, 564 U.S. at 657-658.
      Because we conclude that Hart's testimony on direct examination concerning the contents of Snyder's report was erroneously admitted under our law as it existed at the time of trial, we need not reach the defendant's argument that the same result follows under the United States Supreme Court's recent decision in Smith v. Arizona, 602 U.S. 779 (2024), which was decided after the trial in this case.
      What remains is whether the error resulted in a substantial risk of a miscarriage of justice.  Commonwealth v. Grady, 474 Mass. 715, 721-722 (2016).  To evaluate that question, we assess the case as a whole and "consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision."  Azar, 435 Mass. at 687.  This case turned entirely on the jury's assessment of the victim's credibility, and the DNA evidence did not wholly buttress her account -- a fact helpful to the defense.  Cf. Commonwealth v. Gonzalez Santos, 100 Mass. App. Ct. 1, 6 (2021) (victim's testimony alone, if believed by jury, sufficient to support conviction of rape of child and indecent assault and battery on child under age of fourteen).  In light of this, defense counsel's sensible strategy was to get Snyder's report admitted, given the importance of its findings and conclusions to the theory of defense.  Indeed, in his closing argument, defense counsel emphasized that "[t]he DNA evidence shows it was not [the victim] in [the defendant's] bedroom.  The science is not interested in any party, the science is the science.  The science said the female DNA was not [the victim's] and I ask you to find the defendant . . . not guilty."
      The lack of DNA corroboration was of particular value to the defendant because it undermined the victim's credibility.  The victim's testimony otherwise bore many indicia of reliability.  Specifically, the victim's account of events remained consistent from her first report to DCF through the time of trial.  Her testimony about the assault and the circumstances surrounding it was detailed and precise.  For example, she recalled the name of the television show she and her brother were watching when the defendant called her into his bedroom, her brother's reaction to being interrupted, and the reason why her mother was out of the house that day.  Furthermore, the language the victim used to describe the assault was consistent with the understanding and vocabulary of a child, permitting the inference that it was not influenced by an adult, contrived, or otherwise manufactured.
      In short, taking the error in the context of the trial as a whole, it did not result in a substantial risk of a miscarriage of justice.  Grady, 474 Mass. at 721-722.
      2.  Prior bad acts.  The defendant argues that the judge abused his discretion in allowing the victim to testify that the defendant had touched her inappropriately when the family lived in Chelsea.  Specifically, the victim testified that while living in Chelsea, the defendant "started playing touching private parts" and put his hands on her stomach, breasts, and buttocks.  The judge admitted the testimony on the ground that it would shed light on the relationship between the victim and the defendant.[3]
      The defendant argues that the evidence should not have been admitted, particularly without a limiting instruction (which the defendant never requested).  We review to determine whether the judge abused his discretion in admitting the evidence, see Commonwealth v. Rutherford, 476 Mass. 639, 649 (2017), and "[w]e do not overturn a trial judge's decision on these issues absent a clear error of judgment in weighing the relevant factors."  Id.  We see no such error here.
      Evidence of a defendant's prior bad acts is not admissible to show "bad character or criminal propensity."  Commonwealth v. Lally, 473 Mass. 693, 712 (2016), quoting Commonwealth v. Holliday, 450 Mass. 794, 815, cert. denied sub nom. Mooltrey v. Massachusetts, 555 U.S. 947 (2008).  It may be admitted, however, where it is relevant for a nonpropensity purpose, such as to show "a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive."  Commonwealth v. Helfant, 398 Mass. 214, 224 (1986).  See Mass. G. Evid. § 404(b)(2) (2025).  Where a defendant is charged with sexual assault, "some evidence of [similar] uncharged conduct may be admissible to give the jury a view of the entire relationship between the defendant and the alleged victim, and the probative existence of the same passion or emotion at the time in issue" (quotation and citation omitted).  Commonwealth v. Dwyer, 448 Mass. 122, 128-129 (2006).  However, such evidence should not be admitted if its probative value is outweighed by the risk of unfair prejudice to the defendant.  See Commonwealth v. Crayton, 470 Mass. 228, 249 (2014).  See also Mass. G. Evid. § 404(b)(2).
      The judge did not abuse his discretion by allowing the victim's brief testimony concerning the defendant's prior bad acts.  The evidence was probative:  the conduct involved the same child victim, took place in the same setting (the family home), and occurred relatively close in time to the charged conduct.  See Commonwealth v. Barrett, 418 Mass. 788, 794 (1994).  See also Commonwealth v. King, 387 Mass. 464, 470 (1982).  It shed light on the relationship between the defendant and the victim.  At the same time, the risk of prejudice was slight given the prosecutor's limited inquiry into the subject (only four questions) and the testimony's lack of detail.  Moreover, the prosecutor referred to the evidence only briefly in closing to argue a pattern of escalating conduct.  Contrast Dwyer, 448 Mass. at 128 (jury were provided with detailed evidence of seven uncharged acts of sexual abuse by defendant, and more time was spent on both direct and cross-examination exploring those prior bad acts than crimes charged).
      While admitting that there is no requirement that a judge sua sponte give a limiting instruction, the defendant nonetheless asks that he receive a new trial because the judge did not deliver one.  We have never required a judge to give a limiting instruction in the absence of a request for one, and see no reason to create such a rule in this case.  See Commonwealth v. Bradshaw, 385 Mass. 244, 270 (1982) ("[T]he defendant requested no limiting instruction to protect himself against any prejudice he perceived, either when the other crimes evidence was introduced or when the charge was given.  In this situation, the judge was not required on his own to instruct the jury as to the purpose for which the evidence was offered").  In any event, given the limited nature of the testimony and the fact that the prosecutor confined his argument concerning the evidence to a permissible use, admission of the evidence without a limiting instruction was within the bounds of the judge's discretion.
      Conclusion.  For the reasons set out above, the judgments are affirmed.
                                    
 
So ordered.
footnotes

          [1] We acknowledge the amicus brief submitted by Elana Gordon.
          [2] The defendant does not challenge Hart's testimony concerning the policies and procedures employed in the crime lab about which she had firsthand knowledge.  See Smith v. Arizona, 602 U.S. 779, 799 (2024).
          [3] The parties dispute whether the defendant preserved his objection.  Although he filed a motion in limine to exclude prior bad act evidence, the motion concerned conduct allegedly involving a different victim.  This motion was never acted on and, in any event, no such evidence was offered or admitted.
           At a sidebar conference that took place during the victim's testimony, defense counsel told the judge that he reserved the right to object to prior bad act evidence depending on what the prosecutor sought to elicit.  The prosecutor said that he intended to elicit the testimony only to show a pattern of grooming.  Ultimately, at no point during the victim's testimony did defense counsel lodge an objection.
           We need not resolve whether the argument the defendant raises on appeal was properly preserved below because, in any event, we conclude the judge did not abuse his discretion in admitting the evidence.