NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-748

COMMONWEALTH

vs.

FABIAN GONZALEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial, a jury returned guilty verdicts against the defendant, Fabian Gonzalez, on indictments charging armed assault with intent to murder (G. L. c. 265, § 18 [b]), aggravated assault and battery (G. L. c. 265, § 13A [b] [i]), two counts of assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A), unlawful possession of a firearm (G. L. c. 269, § 10 [a]), carrying a loaded firearm (G. L. c. 269, § 10 [n]), and discharging a firearm within 500 feet of a dwelling (G. L. c. 269, § 12E).  A Superior Court judge, who was not the trial judge (the trial judge having retired), thereafter denied the defendant's motion for a new trial after an evidentiary hearing.  In a consolidated appeal, the defendant

now asserts numerous errors, all of which, individually and collectively, warrant reversal on all convictions. We affirm in part but, pursuant to Commonwealth v. Guardado, 493 Mass. 1, 6-9 (2023) (Guardado II), we vacate the convictions for unlawful possession of a firearm and unlawful possession of a loaded firearm.

Background. We recite the pertinent facts, obtained mostly from witness accounts and surveillance video recordings, in the "light most favorable to the Commonwealth," Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), reserving certain details for later discussion. On August 3, 2015, shortly before 1 P.M., an assailant walked from a public road into a housing complex parking lot and stood next to a parked car occupied by Gregory Bridges (driver seat), Unique Bridges (front passenger seat), and Elizabeth Scott (rear passenger seat). The assailant fired multiple gunshots into the car, striking Gregory Bridges in the head, Unique Bridges in the chest, and Scott in the leg. Following the shooting, the assailant abruptly turned around, walked briskly back toward a white four-door pickup that rolled up to roadside, entered the front passenger side, and rode away in the pickup. Approximately an hour later, just a mile from the scene of the shooting, police officers located a parked, unoccupied white pickup truck with a missing front registration plate. Inside the passenger compartment of the pickup, officers

2

found the registration plate with attaching screws. Investigators determined that the defendant rented the pickup weeks earlier on July 11, 2015, and the pickup contained the rental agreement as well as other paperwork bearing the defendant's name. Investigators also recovered the defendant's fingerprints from the exterior of the front passenger door (above and below the handle) as well as the interior passenger door handle and armrest. Eyewitness descriptions and surveillance video recordings showed that the defendant's overall appearance (gender, height, weight, build, hair, skin tone) bore significant similarities to the assailant.

Discussion. 1. Sufficiency of identification evidence. The defendant claims that the Commonwealth did not present sufficient evidence that he was the assailant. In reviewing the sufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Latimore, 378 Mass. at 677, quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). Viewing the evidence under this standard, we are satisfied that the Commonwealth produced sufficient evidence to submit the question of identity to the jury.

While the defendant isolates various facts and contends none are sufficient to prove the defendant shot the victims, the

evidence cannot be parsed and viewed "in isolation." Commonwealth v. MacCormack, 491 Mass. 848, 860 (2023). Instead, the evidence and reasonable inferences, properly viewed, "create a 'fabric of proof' that is sufficient to warrant the jury's finding that the defendant was" the perpetrator. Id. at 860-861, quoting Commonwealth v. Rojas, 388 Mass. 626, 630 (1983).

Here, jurors could rationally conclude that the fabric of proof implicated the defendant as the perpetrator. The evidence showed the defendant rented a four-door white pickup on July 11, 2015; about a week later a witness saw the defendant driving a white pickup near the housing development where the shooting would occur; a week before the shooting another witness noticed a white pickup driving repeatedly through the same housing development; the assailant, who generally matched the defendant's characteristics, left the crime scene in a four-door white pickup; an hour after the shooting and just one mile away, the police recovered the defendant's rented pickup with the front registration plate removed and stowed in the passenger compartment; and the defendant left his fingerprints on the exterior and interior of the passenger door. From this evidence, jurors could readily infer that the defendant used the rental vehicle to search for the victims, concealed the registration plate during the crime, escaped from the crime scene as a passenger in the waiting pickup, and left his

4

fingerprints on the front passenger door. Such circumstantial proof "need only be reasonable and possible; it need not be necessary or inescapable." Commonwealth v. Davis, 487 Mass. 448, 462 (2021), quoting Commonwealth v. Grandison, 433 Mass. 135, 141, (2001). See Commonwealth v. Morris, 422 Mass. 254, 257 (1996) ("[f]ingerprint evidence coupled with other evidence may rationally link a defendant to a crime").

2. Ineffective assistance of counsel. The defendant next claims that the motion judge erred by failing to allow the defendant's motion for a new trial based upon ineffective assistance of counsel. We evaluate ineffective assistance claims "to see whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). When as here a motion judge did not preside at trial, "we defer only to the judge's assessment of the credibility of witnesses at the evidentiary hearing on the new trial motion, but we consider ourselves in as good a position as the motion judge to assess the trial record." Commonwealth v. Haley, 413 Mass. 770, 773 (1992). The defendant bears the burden on such a motion.

Commonwealth v. Comita, 441 Mass. 86, 90 (2004). We discern no error in the denial of the motion for a new trial.

In that motion and on appeal, the defendant contends that his lawyer lacked any strategy and botched the cross-examination of Detective Michael Stratton by inviting testimony that (1) the defendant was the shooter depicted in the video recording, and (2) the defendant's fingerprints on the pickup meant he was the shooter. While the defendant relies heavily on defense counsel's testimony at the motion hearing that he elicited this testimony through missteps, the motion judge expressly discredited that portion of the testimony. Instead, the motion judge concluded that counsel consistently attempted to portray a flawed investigation led by Detective Stratton who "rushed to judgment" while ignoring significant leads.

The record provides ample support for the judge's conclusions. On cross-examination, Detective Stratton conceded that another person linked to the pickup through fingerprints resembled the defendant, that the police never contacted the other person, and that the video recording was ultimately "inconclusive." Additional cross-examination revealed that Detective Stratton's assumption that the defendant must have been the last person to touch the front passenger door handle was plainly at odds with the testimony of the Commonwealth's own fingerprint expert, who testified prints are not always left

6

behind and print impressions are affected by "different factors."[1] Thus, counsel's cross-examination strategy effectively portrayed Detective Stratton as the leader of an arguably incomplete and flawed investigation. The pursuit of such a strategy also carries risks, Commonwealth v. Avila, 454 Mass. 744, 754-755 (2009), but we cannot say that the strategy, though unsuccessful in hindsight, was manifestly unreasonable. Commonwealth v. White, 409 Mass. 266, 273 (1991).

We also note that the extensive cross-examination of Detective Stratton bore much fruit for the defense. Detective Stratton acknowledged that photo arrays were never presented to witnesses because no one could identify the shooter. The police lacked any cell tower information that could pinpoint the defendant's location at the time of the shooting. Detective Stratton agreed that the bare arm of the shooter depicted in the video recording was not consistent with the defendant's arm bearing a sleeve tattoo. He also admitted that the police never spoke to a total of three named male individuals whose prints were recovered from the pickup. In a rather extraordinary admission, Detective Stratton also testified that the police

[1] Due to an equipment malfunction, approximately twenty-five minutes of testimony from the Commonwealth's fingerprint expert was not transcribed; the parties submitted an agreed reconstruction pursuant to Mass. R. A. P. 8 (d), as appearing in 481 Mass. 1611 (2019).

arrested and charged the defendant before fully processing the other prints recovered from the pickup and only finished processing three months before trial to make sure there was "nothing else that comes up that contradicts what you've previously investigated." This testimony provided a strong indication that counsel was far from incompetent and pursued a logical and coherent strategy.

The record also contradicts the defendant's claims that counsel sat idly by while the Commonwealth presented improper testimony from Detective Stratton. We discern no error in the admission of the evidence and agree with the motion judge that the absence of any objection stemmed from an evident strategy rather than neglect. On direct examination, Detective Stratton testified that the T-shirt found in the back of the pickup was "consistent with the video" and certain items from the pickup were not tested because the "evidence led to" the defendant. An objection to the testimony about the T-shirt would have been unavailing because there does appear to be a white object in the black bed of the pickup depicted in the video recording. As far as the testimony about evidence leading to the defendant, far from indicating a lack of diligence by counsel, the absence of any objection supported counsel's overall strategy because Detective Stratton's testimony was consistent with the defense theme that investigators had no interest in looking at other

8

suspects once they learned (on the day of the shooting) that the defendant rented the pickup.

The record also fails to support the defendant's claim that counsel either elicited or failed to object to witness comments on the defendant's "refusal to speak with police." Testimony at trial showed that Detectives Stratton and Vance Mills intended to speak to the defendant. Detective Mills testified that he spoke with the defendant's mother but not the defendant. This testimony fell short of indicating a refusal to speak with the police and was appropriately offered to rebut the defense claim of an incomplete investigation. Detective Stratton testified that the police tried to speak with several people including the defendant and his mother about the defendant's tattoo. Defense counsel then asked, "And when you said, can we talk to you, they said no?" Detective Stratton replied, "Correct." Counsel then asked, "So you never even got as far as questioning about the tattoo?" Detective Stratton asked, "With who? Fabian Gonzalez?" Counsel then clarified, "No, the Mom." Like the motion judge, we do not read this exchange as a comment on the defendant's refusal to speak, especially in light of Detective Stratton's testimony a moment before that the police were unable to find the defendant.

In another evident strategic choice, defense counsel addressed Detective Stratton's improper reference to a booking

9

sheet from an unrelated case involving the defendant. The prosecutor had attempted to use the booking sheet to refresh Detective Stratton's memory about the defendant's size and weight closer in time to the shooting. Following an objection and a sidebar conference where the parties addressed a remedy to the booking reference, defense counsel told the judge, "I know how I'm going to address it on the cross examination." The judge replied, "Okay, I'll just leave it at that." On cross-examination, defense counsel delivered as promised, and Detective Stratton revealed that the booking was for operating an uninsured motor vehicle. So, rather than leaving the matter untouched or requesting a curative instruction, defense counsel chose to confront Detective Stratton's remark head on by demonstrating that the prior offense was insignificant. This maneuver reflected reasonable judgment, not profound neglect.

Next, the defendant claims counsel erred by failing to object to a series of sanitized booking photos introduced into evidence. These photographs included the defendant and five other persons who left fingerprints in the pickup as well as another individual. Counsel did not object. Assuming there was an insufficient foundation to admit the photographs and the testimony of Detective Stratton relative to the size and weight of the individuals depicted, the absence of an objection does not indicate an error by counsel. Instead, the absence of an

objection was an evident strategic decision to display these individuals to the jury as alternative culprits in a flawed investigation and thereby suggest a reasonable doubt as to the defendant's guilt.

We agree with the defendant's contention that Detective Stratton should not have testified about a conversation he had with Casey Valdez. Detective Stratton testified that Valdez called the defendant's mother within an hour of the shooting and spoke of the victims' wound locations, information that "nobody knew." Later, he testified that Valdez told him that she spoke with the defendant's mother. Defense counsel objected, and a sidebar followed. The trial judge sustained the objection and refused to allow further testimony about Valdez's out of court statements. The defendant now contends, as he did in his new trial motion, that trial counsel erred by failing to move to strike testimony that Valdez "learned what happened" from the defendant's mother. Valdez's hearsay statement to Detective Stratton should not have been admitted, and counsel should have moved to strike; however, we discern no prejudice for two reasons. First, when Detective Stratton broached the subject, counsel followed up and asked, "And she didn't tell you that Fabian Gonzalez knew anything about the shooting?" Detective Stratton replied, "She did not." This clarification by counsel blunted any suggestion that the defendant shared inside

11

information with his mother.  Second, counsel successfully impeached Detective Stratton's claim that nobody knew the details of the shooting.  The shooting occurred in a parking lot with numerous witnesses converging to render aid to the victims, and information quickly appeared "all over Facebook."  Because detail of the wound locations was not information known only to the shooter, as Detective Stratton may have initially implied, and the prosecutor avoided this subject altogether, any error by counsel did not result in prejudice.  Saferian, 366 Mass. at 96.

3.  Sleeping juror.  As a final claim of ineffective assistance, the defendant contends that counsel erred by failing to report a suspected sleeping juror or to request a voir dire. Just before the judge sent jurors out to deliberate, the prosecutor notified the judge, "throughout the trial I feel there's one juror who has consistently been falling asleep, and I noticed it more so today because I stared at them directly." Defense counsel agreed and reported that the defendant brought it to his attention "a few times."  After identifying the juror, the judge said, "[E]very time I've looked, he's been awake or at least paying attention or appearing to be awake."  The judge reminded counsel that it was a "bit late" to be pointing this out because of his "obligation under the case law to do something about it."  The judge took no further action, and no one raised an objection.  The motion judge rejected the claim.

12

"A judicial observation that a juror is asleep, or a judge's receipt of reliable information to that effect, requires prompt judicial intervention to protect the rights of the defendant and the rights of the public, which for intrinsic and instrumental reasons also has a right to decisions made by alert and attentive jurors." Commonwealth v. Beneche, 458 Mass. 61, 78 (2010), quoting Commonwealth v. Dancy, 75 Mass. App. Ct. 175, 181 (2009). A judge has discretion regarding the nature of the intervention, and not every complaint regarding juror inattentiveness requires a voir dire. Beneche, supra at 78. The defendant bears the burden of showing the judge's action was "arbitrary or unreasonable." Commonwealth v. Brown, 364 Mass. 471, 476 (1973).

Here, the judge considered the belated and unspecified report by counsel. He noted that the juror appeared to be awake "every" time he looked at him. The judge also considered whether it was possible that the juror was "just thinking seriously." See Commonwealth v. Keaton, 36 Mass. App. Ct. 81, 87 (1994) ("[m]editation may be mistaken for somnolence"). Defense counsel rejected this possibility without elaboration and without identifying when the juror appeared to be sleeping or why counsel delayed notifying the judge. Ultimately, the judge "was entitled to rely on his own observations at the trial" with respect to the juror. Commonwealth v. Morales, 453

13

Mass. 40, 47 (2009), and he was not obliged to act on the inexplicably delayed, conclusory report. Commonwealth v. Vaughn, 471 Mass. 398, 412 (2015). See Commonwealth v. Fritz, 472 Mass. 341, 353-354 (2015) (no abuse of discretion in declining to conduct a voir dire where judge "had been watching the jury and did not see any jurors sleeping"). Contrast Commonwealth v. Villalobos, 478 Mass. 1007, 1008 (2017) (voir dire appropriate where prosecutor reported juror fell asleep during the testimony and another juror fell asleep during cross-examinations). "As there was no error, there can be no ineffective assistance of trial counsel." Commonwealth v. Dykens, 438 Mass. 827, 837 (2003).

4. Newly discovered evidence. As an additional claim in his motion for a new trial and on appeal, the defendant argues that newly discovered evidence merits a new trial. He contends that testimony of a fingerprint expert, retained posttrial by the defense, casts doubt on the justice of the conviction. The motion judge found that the new defense expert "credibly testified at the evidentiary hearing that, because of the size of the front passenger door handle and the location of the prints, it could not be determined when Gonzalez's prints were left on the door handle, and it could not definitively be said that he was the last person to touch the handle." The motion judge concluded that this testimony did not constitute newly

14

discovered evidence and did not carry sufficient weight to cast real doubt on the convictions. "[A]n appellate court will examine the motion judge's conclusion only to determine whether there has been a significant error of law or other abuse of discretion" (quotation omitted). Commonwealth v. DiCicco, 470 Mass. 720, 728 (2015). After a careful review of the record, we discern no error by the motion judge.

Even if credible, the testimony offered by the posttrial expert is not "newly discovered" and does not "cast[] real doubt on the justice of the conviction." Commonwealth v. Grace, 397 Mass. 303, 305 (1986). As the motion judge noted, the defense could have presented a fingerprint expert at trial but did not do so. Furthermore, as previously discussed, the posttrial expert's testimony is entirely consistent with the testimony of the Commonwealth's expert who testified at trial and opined that prints are not always left behind, and print impressions are affected by "different factors." Defense counsel expressly relied on the testimony of the Commonwealth's expert when he argued in his closing that the expert testified "you just can't tell when fingerprints were actually left" behind.

5. Other alleged errors. Although neither the defendant nor the trial judge noted anything amiss about the prosecutor's closing argument at trial, the defendant claimed in his new trial motion and now claims on appeal that the argument was so

15

riddled with obvious prejudicial errors that he did not receive a fair trial. We disagree. All the defendant's arguments take the prosecutor's remarks out of context and do not require extensive discussion. The prosecutor properly argued inferences from the surveillance video recording, responded appropriately to arguments of the defense, did not imply she had specialized knowledge about the case, did not appeal to sympathy, did not imply the getaway driver struck a deal with the police, and did not misstate the evidence. We also note that the judge repeatedly told jurors that arguments are not evidence. We discern no error by the prosecutor and no abuse of discretion by the motion judge who rejected the defense claims.

For the first time, the defendant claims error in the attorney-conducted voir dire of potential jurors relative to the absence of scientific evidence. The defendant contends that the prosecutor's questions posed to potential jurors sought to commit them to convicting the defendant and misstated the law on circumstantial evidence. We discern no error and no substantial risk of a miscarriage of justice. Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967). As the Commonwealth concedes in its brief, the questioning of potential jurors became unwieldy and lengthy. None of the questions now challenged, however, committed jurors to convict or evinced an abuse of discretion by the trial judge who allowed them. Commonwealth v. Gray, 465

16

Mass. 330, 338-340, cert. denied, 571 U.S. 1014 (2013). Instead, the questions properly probed whether jurors could decide the case without bias. Also, to the extent any attorney discussion of circumstantial evidence may have been inartful, the judge anticipated such a possibility and carefully instructed potential jurors on this topic prior to the voir dire and instructed the jurors in the final charge. See Commonwealth v. Webster, 5 Cush. 295, 310-312 (1850).

As a final claim of error, the defendant contends that his cousin and two others who spoke to a juror during a break in the trial engaged in "presumptively prejudicial contact" requiring an inquiry of the juror. The trial judge addressed this issue during a hearing, issued a written decision, and declined to credit the affidavit of the defendant's cousin. The judge also noted that the affidavit failed to disclose any extraneous influence or juror bias. We discern no error.

6. Jury instruction on firearm offenses. In 2017, the jury returned guilty verdicts in the present case on, among others, indictments charging unlawful possession of a firearm (G. L. c. 269, § 10 [a]) and carrying a loaded firearm (G. L. c. 269, § 10 [n]). Five years after the defendant's trial, while this direct appeal was still pending, the Supreme Court issued a decision in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022). In light of that decision, the

17

Supreme Judicial Court determined that the "absence of a license" is an essential element for crimes charging unlawful possession of a firearm, and a judge must instruct jurors that the Commonwealth bears the burden of proving that a defendant lacked the requisite license. Commonwealth v. Guardado, 491 Mass. 666, 690-693 (2023) (Guardado I). Following arguments in the present case, we stayed the defendant's direct appeal while awaiting then-pending reconsideration by the Supreme Judicial Court of its decision in Guardado I.

On reconsideration, the Supreme Judicial Court clarified that the remedy for a flawed jury instruction on this issue is a new trial rather than a judgment of acquittal. Guardado II, 493 Mass. at 6-9. Here, without benefit of Bruen, Guardado I, or Guardado II, the judge did not fully instruct the jury on the Commonwealth's burden of proof, and the Commonwealth did not attempt to prove the absence of a license for convictions of unlawful possession of a firearm and carrying a loaded firearm. The issue of licensure simply did not emerge during the defendant's trial as "precedent clearly had established that absence of licensure was not an essential element of any of the crimes with which the defendant was charged." Guardado II, 493 Mass. at 6. Because the defendant's direct appeal was pending when the Bruen decision issued, the newly announced rule applies to this case. As dictated by the holding in Guardado II, we

18

must vacate the convictions for unlawful possession of a firearm and carrying a loaded firearm and set aside those verdicts. Guardado II, 493 Mass. at 6-9. The Commonwealth, of course, remains "free to retry the defendant" on those charges "if it so chooses." Commonwealth v. Wooden, 103 Mass. App. Ct. 677, 684 (2024).

Conclusion. For the reasons set forth above, we discern no error or combination of errors that casts doubt on the verdicts for armed assault with intent to murder (indictment 1), aggravated assault and battery (indictment 2), assault and battery by means of a dangerous weapon (indictments 3 and 4), and discharging a firearm within 500 feet of a dwelling (indictment 7), and we affirm those convictions. We likewise affirm the order denying the defendant's motion for new trial. We vacate the convictions for unlawful possession of a firearm (indictment 5) and carrying a loaded firearm (indictment 6) and set aside those verdicts.

So ordered.

By the Court (Green, CJ,
Desmond & Hodgens, JJ.[2]),

Assistant Clerk

Entered: June 6, 2024.

---

[2] The panelists are listed in order of seniority.